CLYDE C. VASSAR, APPELLEE, V. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLANT.

FILED APRIL 24, 1931. No. 27630.

*Byron Clark, Jesse L. Root, Crites & Crites* and *J. W. Weingarten,* for appellant.

*M. F. Harrington* and *George M. Harrington, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

PAINE, J.

This is an appeal from a judgment entered upon a verdict of ten jurors for $3,464.33 in a suit for damages brought in Dawes county, Nebraska, for the destruction of 1,954 bushels of stored potatoes destroyed by the burning of a potato cellar, located 198 feet from the main track, from a fire alleged to be negligently started by sparks from a freight engine passing through the village of Marsland. Liability was denied and proof was given that the engine was equipped with proper spark arresters.

Eighty-three pages of one of the briefs submitted are an excellent and helpful abstract of the testimony of each witness as found in the entire bill of exceptions of over 300 pages, carefully numbered as to pages and interrogatories, fully indexed as to witnesses as well as an alphabetical index of the 63 cases cited and relied upon by defendant.

Thirty-one errors are set out for a reversal of this judgment. Five of these errors related to the testimony of the defendant's witness, Clyde H. Poole, who testified on direct examination that he went into the potato cellar shortly before the fire with the plaintiff. "Q. What did you discover? A. There was an awful lot of smoke, and that the stove to the left of the door as we went in was burning awfully high. Q. One of the oil burners? A. Yes, sir."

The plaintiff, Vassar, denied that the sheet-iron stoves were lighted at all. On cross-examination the witness Poole admitted that on the day of the fire they were good friends. "Q. Today you are the one enemy he has in that whole country, aren't you? By Judge Root: Objected to as not proper cross-examination. Overruled. Exception.

Q. You are an enemy of his today, aren't you? A. I think so." He was also asked whether he did not say to two boys, Clarence Ball and Lyle Rising, who were working for him, that Vassar, the plaintiff, "has done me all the dirt he could, and now I have got a chance and I will swear to anything to get even with him," which statement was positively testified to by the two young men named.

1. In examining the record made, we find that every possible objection was entered to each step in this cross-examination of Poole by Judge Root, and in instruction No. 12 the court on its own motion said to the jury: "You are further instructed that evidence adduced by the plaintiff in rebuttal for the purpose of proving that the defendant's witness, Poole, made statements out of court, evidencing the intention on his part to 'testify to anything' against the plaintiff in this case, does not prove or tend to prove any of the charges of negligence made by the plaintiff in his petition against the defendant, and the same is to be considered, if at all, only as it might bear upon the question of the witness' bias or prejudice, if any." Was this a proper instruction to be given to the jury?

The appellant insists that the credibility of a witness cannot be tried by raising and trying an independent issue as to his honesty, his interest, or his motives.

Were the rulings of the trial court reversible error in admitting the above evidence and much more of the same character? The appellee cites many authorities, among them the case of *Raymond's Admx. v. Rutland R. L. & P. Co.* (90 Vt. 373) 98 Atl. 909, in which we find this statement: "A party is entitled to find out the full interest of a witness who testified against him, and all the circumstances calculated to create bias, prejudice, or zeal on the part of such witness may be inquired into." And in *Pierson v. State*, 188 Ind. 239, it was held that any fact tending to impair the credibility of a witness by showing his interest, bias, ignorance, motives, might be shown in cross-examination, but the extent to which such examination might be carried is within the sound discretion of the court. It appears that the instruction of the trial court is proper.

In *People v. Brooks*, 131 N. Y. 321, which was an arson case, it is shown that the hostility of a witness toward a party against whom he is called may be proved by any competent evidence, and that this may be done without first examining the witness as to his hostility, because it is not a case where the party against whom the witness is called is seeking to discredit him by contradicting him, but he is seeking to discredit him by showing his hostility and malice, which may be proved by any competent evidence.

And to the same effect is the case of *Blenkiron v. State*, 40 Neb. 11, where it was held: "In the cross-examination of a witness it is competent to interrogate him in regard to any interest, pecuniary or otherwise, and the extent of such interest he may have in the result of the trial of the case in which he is testifying, as affecting his credibility."

Cross-examination of a witness to show bias, hostility, or that he is actuated by a spirit of revenge is entirely distinct from impeachment, which is governed by its own rules of evidence.

2. A very old New York case states: "It is always competent to show that a witness is hostile to the party against whom he is called; that he has threatened revenge, or that a quarrel exists between them. A jury would scrutinize, more closely and doubtingly, the evidence of a hostile than that of an indifferent or friendly witness. Hence, it is always competent to show the relations which exist between the witness and the party against, as well as the one for, whom he was called." *Starks v. People*, 5 Denio (N. Y.) 106.

"Hostility of a witness to the defendant may be proved by any competent evidence, either by the witness himself or by examination of other witnesses as to facts from which such hostility appears; it being unnecessary in such case to first examine the witness as to his hostility." *People v. Michalow* (229 N. Y. 325) 128 N. E. 228.

"Generally, on cross-examination of a witness, any fact may be elicited which tends to show bias or partiality, and if the witness denies the fact showing the bias or in-

terest, the cross-examining party may call other witnesses to contradict the witness." *Cabel v. State*, 18 Ala. App. 557.

"While rather wide latitude is allowed on cross-examination to develop witness' bias, extent of connection with case, motive, and leaning against particular defendant, court has reasonable discretion in confining examination to prevent diversion to outside issues." *Hackins v. State*, 212 Ala. 606.

It has frequently been held that it is error to deny cross-examination as to the state of feeling or bias of a witness. *State v. Kenstler*, 44 S. Dak. 446.

The power of cross-examination should not be curtailed to such an extent that it would not serve its purpose of being an "efficacious means available for the exposure of artful fabrications of falsehood by witnesses in our courts of justice." *Davis & Son v. Hays*, 89 Ala. 563.

And it is further held that considerable latitude should be allowed in eliciting from a witness, or in attempting to elicit and to establish, bias, hostility, corruption, or interest of the witness bearing upon his credibility. *Glass v. State*, 147 Ala. 50.

" 'Personal ill will on the part of a witness toward a party to the action', says the South Dakota court in a well considered opinion (*Richardson v. Gage*, 28 S. Dak. 390), 'is evidence of bias which may affect credibility, and the right to elicit the fact on cross-examination may not often be denied without an abuse of discretion which would be deemed prejudicial to the litigant. * * * In such cases, the proper scope for the exercise of discretion by the trial court is in limiting the cross-examination to a disclosure of such facts only as may show the existence of hostility, and rejecting any matters which might be pertinent only to a justification of hostility on the part of the witness, for it is the existence of the feeling which is material, and not the right or wrong in the transaction which occasions it'." 5 Jones, Evidence (2d ed.) sec. 2355.

Another error set out at some length was to the effect that Mr. M. F. Harrington in his closing argument stated

that his client was a poor man and had lost his farm, which was objected to by counsel, and that Mrs. Hollibaugh, one of the plaintiff's witnesses, while riding toward Marsland the evening of the fire stated that she saw streams of fire coming out of the locomotive in the Marsland yard, and then upon objection withdrew the statement and stated that this statement had been made by another witness, Dayton Sullenburger, which witness had testified that he saw a stream of fire coming from the engine, and upon further objection by Judge Root the court sustained the objections in the main, and Mr. Harrington told the jury to disregard such statements, that "I make no statement in this case over objection." No record was made by the court reporter of anything that occurred during this final argument. These matters are all set out in affidavits of attorneys and of two jurors, filed with the clerk and presented to the court seven months after the trial at the time of the arguments upon the motion for new trial. We hold that the defendant was not prejudiced by what occurred during the argument. The approved method to follow when objections are made to statements in an argument to the jury is for the court to stop the argument and instruct the court reporter to take down the objectionable statement, together with the objections made thereto and the ruling of the court thereon. This method was not followed, and such matters cannot be set out as satisfactorily in affidavit form as by an actual verbatim record of the official court reporter.

The errors discussed above were presented and argued with force in the briefs. Many other allegations of error of a nature similar to those passed upon by this court in other railroad fire cases are set out in the briefs. All of them have been carefully examined and considered, and we find the rulings of the court to be free from prejudicial error. The judgment of the district court is therefore

AFFIRMED.