STATE OF NEBRASKA, APPELLEE, V. JOHNSON KENNETH EVANS, APPELLANT.

191 N. W. 2d 145

Filed November 24, 1971. No. 37790.

Martin A. Cannon of Matthews, Kelley, Cannon & Carpenter, for appellant.

Clarence A. H. Meyer, Attorney General, and Melvin K. Kammerlohr, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

WHITE, C. J.

Asserting that the eyewitness identification of the defendant was constitutionally defective, the suppression by the State of material evidence, and the excessiveness of the sentence, the defendant appeals from a conviction and sentence for robbery. We affirm the judgment and sentence of the district court.

About 11 a.m. on September 20, 1968, the West Lake Grocery, 4238 Lake Street, Omaha, Nebraska, was robbed. At the time of the robbery the sole occupants of the building were Arthur Haffke, the proprietor, and his son, an assistant, Warren Haffke. At 11 a.m. on that morning two negro men came into the store. They walked in the front door (one "in" and one "out" door),

came up to the counter, and asked where the milk was. The proprietor was behind the check stand. One of the men was tall and one was short. After being advised where the dairy bar was, both proceeded to walk down an aisle to the north side of the store where the milk was. Haffke, because of their conduct and because he smelled whiskey on the breath of the tall man when he talked to him, became suspicious, pulled his gun out from under the counter, and put it in his pocket. They were in the store for a period of 8 to 10 minutes. Haffke, his suspicions aroused, walked down the aisle and kept them under relatively continuous observation in a mirror which was posted so he could observe them across the width of the store. He observed them while they were talking right in front of the dairy bar. They talked for several minutes. At the same time, Warren Haffke, the son who was behind the meat counter directly adjacent to the dairy bar, had them under observation. After observing the two men in the mirror, Haffke walked back to the check stand and waited probably 4 or 5 minutes, at which time the defendant and his companion appeared at the check stand carrying a half gallon of milk. As Haffke opened the cash register he was pushed against the drug rack which was behind him. When he turned around the defendant had his hands in the cash register. Haffke pulled his gun and shot at the robbers as they started running toward the doors. The shorter man was hit and the tall man escaped. Haffke in court positively identified the defendant Evans as the tall man who was in the store and committed the robbery.

Warren Haffke, the son, was behind the meat counter. He saw the two men come into the store and walk to the back of the store where the dairy case was, and observed them during this period of time. From the meat counter he could see right down the aisle to the dairy case. The two men were in front of the dairy case and he observed them while they stood there talking

for perhaps a couple of minutes. At the end of their conversation he saw one man step away from the case and look around the aisles. After doing that he stepped back and walked up the aisle toward the meat counter. He was carrying a half gallon of milk. Warren Haffke's testimony corroborated in detail that of Arthur Haffke, the proprietor. There were some discrepancies, but he testified that there was a tall man and a short man; that the tall man was carrying a half gallon of Roberts milk, the same as Arthur Haffke testified; that the tall man was in front and the short man was behind him; that they went to the checkout stand and while at the checkout stand they were in his direct line of vision; and that he heard the tall man ask for a package of cigarettes and observed the rest of the circumstances as Arthur Haffke had related them. He actually saw the tall man push his father, he saw his father lose his balance, he saw the two men starting to run, and he saw his father shooting at them. Warren Haffke positively and unequivocally identified Evans as the tall man in the store. The argument that there is insufficient evidence to convict the defendant is obviously without merit and one that will not be further discussed.

Defendant's main contention in this appeal is that a new trial should have been granted because subsequent to the events related above, Arthur Haffke, the proprietor, was unable to identify the defendant when two colored pictures were shown to him by a police officer sometime later. Seizing on the fact that the police officer showed the proprietor, Arthur Haffke, a series of colored pictures for the purpose of identification sometime after the commission of the crime, the defendant argues strenuously that under the doctrine of United States v. Wade, 388 U. S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149, and other "line-up" cases require counsel's presence, identification by Haffke was constitutionally invalid and impermissible because there was a lack of sufficient foundation to show or permit an independent in-court

identification of the defendant by Haffke. There are two clear answers to this contention: (1) The doctrine of Wade, cited *supra*, is not applicable to photographic identification. State v. Moss, *ante* p. 391, 191 N. W. 2d 543. As that opinion points out the Second, Fifth, Seventh, Ninth, and Tenth Circuits have so held. See, United States v. Bennett, 409 F. 2d 888; United States v. Ballard, 423 F. 2d 127. (2) The doctrine of Wade does not apply to the present case as Arthur Haffke, in the present case, did not identify Evans, the defendant, from the photographs that were shown him. The basic premise of the Wade case is that improper "line-up" identification, without the presence of counsel, suffers from the "dangers inherent in eye-witness identification and the suggestibility inherent in the context of the pretrial identification."

We cannot infer an impermissible suggestiveness from the failure of identification. The foundation for an independent identification is much stronger here than in State v. Cannon, 185 Neb. 149, 174 N. W. 2d 181. We deem it unnecessary to repeat the evidence in detail. Arthur Haffke's testimony as to the defendant being in the store for a period of 8 to 10 minutes, the rather lengthy hesitation at the dairy bar, the incident at the check counter, and the subsequent escape of the defendant, all corroborated in minute detail by the independent observations of Warren Haffke, furnish a foundation to support the admission of testimony as to in-court identification. There is no merit to this contention.

The defendant, on motion for new trial, offered evidence to support his contention that the state *suppressed* the fact that Arthur Haffke, the proprietor, had looked at some colored pictures presented by the police sometime prior to the trial and failed to identify the defendant Evans in one of these pictures. The trial court rejected this contention and we find no abuse of its discretion in this respect. Basically, the argument of the defendant rests upon the contention that there was a failure to

cross-examine the State's witness in this respect. There is no evidence of suppression. On the contrary, the record affirmatively discloses the very area of evidence which the defendant claims was suppressed or concealed. It overlooks the following testimony elicited by cross-examination of the witness Arthur Haffke by defense counsel at the preliminary hearing. It is as follows: "Mr. Carey: You never looked at any photographs of anybody? A. I looked at the photographs, yes. Mr. Carey: Where did you look at the photographs? A. At the store. Mr. Carey: Members of the police department brought those photographs out? A. Yes. Mr. Carey: How many photographs did you look at? A. One—one only—the big fellow. Mr. Carey: Do you recall the name of the police officers who showed that photograph to you? A. No. I can't. Mr. Carey: What did they tell you when they showed you that single photograph? A. They didn't show me a single photograph. He had a whole bunch. He said, 'Is that man in there that pushed you?' and I looked and I said, 'This one fellow that has died his hair yellow down the center here' (indicating). This is the fellow I picked out. Mr. Carey: You did see a photo then of an individual who had a yellow streak down the center of his hair, is that right? A. Yes. Mr. Carey: This same streak was there at the time he came in your store? A. No, not when he walked in the store. Mr. Carey: So you identified him by the streak down the hair? A. No, by his face. I wouldn't know one streak from another. Mr. Carey: So you will concede that the photograph which you observed didn't look exactly like the person you identified? A. Except for the hair-do. Mr. Carey: You indicate that you looked at only one photograph, but that is obviously incorrect. A. No, I looked at the whole bunch. Mr. Carey: But you identified only one man— A. That's right. Mr. Carey: (continuing) As a result of the photographs which you observed? A. That's right. Mr. Carey: How many photographs did you look at?

A. He had several. I don't know. He said, 'Is the man here that pushed you?' and he laid them there and I looked at them." There is no merit to this contention.

In an overlapping argument the defendant again argues that the claimed newly discovered impeachment evidence of Arthur Haffke's identification of the defendant is potent enough so that the court should have granted a new trial. Again, we find no abuse of the trial court's discretion in this respect. As we have pointed out there was no suppression or concealment by the State of this evidence and it is difficult to see how it could be deemed as "newly discovered" evidence. Putting aside rhetoric, the contention simply is that one of the prosecuting witnesses at some time prior to the trial was unable to recognize the defendant in a couple of colored Polaroid pictures taken some time previously. Human error in picture identification is common. But, more important, we observe that the testimony was only impeachment of one of the prosecuting witnesses. The contention that a new trial should be granted ignores the independent and strongly corroborated testimony of the witness, Warren Haffke, which has been recited in more detail heretofore. The translation, by a human being, from the visual physical identification of a defendant at the scene of the crime, into a recognition from a colored Polaroid photograph may indeed be difficult. At most, such impeachment goes to the credibility of the witness and is for the jury. Disparity of likenesses from a photograph, in this case a colored Polaroid, and the actual physical appearance of a human being is a matter of common knowledge. His actual physical identification of the defendant could not have been in any way enhanced by his failure to identify the colored Polaroid photograph. In light of the strong and persuasive in-court identification by Warren Haffke and the detailed independent corroboration by Arthur Haffke's testimony, we cannot hold that this claimed newly discovered evidence by way of impeach-

ment is so potent that it was an abuse of discretion by the trial court to refuse to grant the new trial. We have also stated that a new trial will not ordinarily be granted for newly discovered evidence which, when produced, will merely impeach or discredit a witness who testified at the trial. These rules were all summarized recently in State v. Wycoff, 180 Neb. 799, 146 N. W. 2d 69, where this court said as follows: "A motion for a new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial court and unless an abuse of discretion is shown, its determination will not be disturbed. Smith v. State, 169 Neb. 199, 99 N. W. 2d 8; Fugate v. State, 169 Neb. 420, 99 N. W. 2d 868. New cumulative evidence tendered in support of a motion for new trial must be so potent that, by strengthening evidence already offered, a new trial would probably result in a different verdict. Wiegand v. Lincoln Traction Co., 123 Neb. 766, 244 N. W. 298; Gates v. State, 160 Neb. 722, 71 N. W. 2d 460; Smith v. Smith, supra. A new trial will not ordinarly be granted for newly discovered evidence which, when produced, will merely impeach or discredit a witness who testified at the trial. Baskins v. State, 139 Neb. 803, 299 N. W. 188; Ogden v. State, 13 Neb. 436, 14 N. W. 165." See, also, State v. Haynes, 186 Neb. 238, 182 N. W. 2d 199.

The trial court observed and heard the witnesses and observed the defendant in the course of the trial. It was unable to find any error or prejudice sufficient to grant a new trial arising from any failure to prove that one of the prosecution witnesses failed to identify the defendant from pictures taken before the trial. We can find no abuse of discretion in this determination and it is without merit. Eyewitness identification has, throughout history, been subject to possible human error. Nevertheless, discrepancies and errors in identification where there is an adequate foundation, are matters for a jury determination.

The defendant attacks the sentence as excessive. The

presentence investigation of this defendant is a part of the record. It is true that he was honorably discharged from the military service. It is also true that the present crime committed was committed while the defendant was on probation from another offense. It is also true that the present offense, robbery, is a serious crime and involved the actual use of physical violence by the defendant. The maximum sentence is 50 years and the minimum sentence is 3 years. The trial court observed the conduct and demeanor of the defendant and heard the evidence. We are not prepared to say that the trial court abused its discretion in imposing the sentence of 5 to 7 years.

Other contentions of the defendant have been examined and are without merit. The judgment and sentence of the district court are correct and are affirmed.

AFFIRMED.