STATE OF NEBRASKA, APPELLEE, V. RICHARD E. FOWLER, APPELLANT.

227 N. W. 2d 589

Filed April 3, 1975. No. 39662.

Dean E. Erickson, for appellant.

Paul L. Douglas, Attorney General, and Bernard L. Packett, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

In the amended information filed in this action, the defendant, Richard E. Fowler, was charged in count I thereof with embezzling on or about January 25, 1974, certain money in excess of $100 belonging to Steak-O-Rama, a corporation; and in count II was charged with being a habitual criminal. He pleaded not guilty to both charges and was tried to a jury, which returned a verdict finding him guilty of the offense of embezzlement. A separate hearing was thereafter held before the District Judge, as provided by law, to determine whether defendant was a habitual criminal; and the court found upon the evidence presented that he was. Subsequent thereto, defendant filed a motion for a new trial, based primarily upon the ground of newly discovered evidence, which consisted of letters received by the trial judge and a part-time public defender of Lancaster County from an individual who signed the name "Mike Conrad," allegedly confessing to the commission of the crime and asserting that the defendant was innocent. At the conclusion of the hearing on the motion, at which evidence was taken, the court overruled defendant's motion for a new trial. The court then sentenced the defendant to a term of 10 to 15 years in the Nebraska Penal and Correctional Complex. Defendant appeals to this court from that judgment and sentence. We affirm.

In his brief on appeal, the defendant makes the following assignments of error as grounds for reversal: (1) That the evidence was insufficient to sustain the verdict of the jury, and was hearsay and circumstantial evi-

dence; (2) that the court erred in not granting a new trial on the ground of newly discovered evidence; (3) that reversible error was committed by the prosecution in failing to notify the defendant or his counsel of the purported confessions; and (4) that the habitual criminal statute is unconstitutional, and the sentencing of the defendant thereunder violated his constitutional rights to due process and equal protection of the laws.

It appears from the record that Steak-O-Rama is a corporation with its principal place of business in Des Moines, Iowa, and operates a chain of 15 self-service restaurants in Iowa and Nebraska. One of its restaurants is located at 244 North 12th Street, Lincoln, Nebraska. The defendant, Richard E. Fowler was manager of the Lincoln branch, having been appointed as acting manager on December 23, 1973, and as manager on December 31, 1973.

Paul Consiglio, who testified at the trial, was the area manager or supervisor for Steak-O-Rama, including the Lincoln unit. He testified generally as to the method of operating and supervising the Steak-O-Rama units, and the method of accounting for receipts in the daily operation of the Lincoln Steak-O-Rama. The defendant complains that much of Consiglio's testimony at the trial was hearsay evidence and should have been excluded because the actual records of Steak-O-Rama, material to the issues, were not introduced in evidence by the State. While it is probably true that some of his testimony might well have been objected to on the ground it was hearsay evidence, yet we do not find from a search of the record in this case that defendant's counsel ever objected to the receiving of such evidence on that ground. His testimony is properly in the record and may be considered by us.

Consiglio testified that a daily operations report is filled out at the close of each day's business which includes the beginning and ending cash register reading each day, the difference being the daily receipts. A

deposit slip for the daily receipts would be made out at the close of the day and receipts placed in a locked deposit bag and deposited in the night depository of the National Bank of Commerce in Lincoln. The daily operations report, including the record of deposit of the day's receipts, would be mailed daily to the home office in Des Moines. Consiglio also testified that at the end of each month the home office at Des Moines receives a bank statement from the National Bank of Commerce and this statement is reconciled three different ways against the daily ledger, made up from data submitted daily by the store manager, to verify that the deposits had been made. He further testified that on January 25, 1974, he was in Lincoln and had a meeting with the defendant and with the assistant manager, Kevin Knapp, after the close of business. The meeting lasted from about midnight until 5 a.m. on January 26th. During this meeting he prepared the daily report for the defendant, counted the receipts, prepared the deposit, and gave it to the defendant to recount and verify as correct. The defendant filled out the total column, verified the deposit, and then all the parties left. At that time Fowler took Knapp home in his automobile. Consiglio returned to the Lincoln Steak-O-Rama about 1 in the afternoon on Saturday, January 26th, but was informed by the help that Fowler had gone down to pick up a new car he had purchased. Fowler did not show up while Consiglio was in the restaurant on January 26th. Consiglio further testified that when the next bank statement arrived in the home office in Des Moines, a comparison of the ledger sheet with the bank statement revealed that no deposits were made on two particular dates, January 22, when $278.34 should have been deposited, and January 25, when $433.79 should have been deposited. The latter is the deposit which Consiglio prepared and gave to the defendant to verify and complete, and which was the

basis for the charge of embezzlement in the amended information.

Consiglio returned to Lincoln about February 14, 1974, and had a conversation with Fowler in the presence of Captain Sellmeyer of the Lincoln police department. Fowler at that time told them that he had left the restaurant with the money and had taken Knapp, the assistant manager, home and then returned to the store and placed both bags of money back in the restaurant in a locked cabinet. On the other hand, Donald Buckner, a police officer of the City of Lincoln, testified that Fowler had told him about the meeting which lasted until 4 or 5 o'clock in the morning and told him that he had taken the money to his car, that he decided it was too early in the morning to make a deposit, and that he was tired. He then went back inside the restaurant, put the money in the cupboard which is underneath the cash register, and left the money there. That was the last he saw it. He stated all that occurred *before* he had taken Knapp home in his car. Knapp also testified at the trial, and verified the fact that Consiglio had made up the deposit and the daily record during the meeting held on January 25th, and that Fowler gave him a ride home afterward. He doesn't recall whether they had the deposit with them, but stated they did not stop anywhere or deposit the money. It was the claim of the defendant during the trial that it was not possible for him to make the deposit that evening because they had previously lost the key to the night depository in the bank, and that the key had been missing for a period of approximately 2 weeks during the month of January, prior to the meeting on January 25th. However, Consiglio testified, as did also the Lincoln police officer, that Fowler had never informed him or the company that there was any missing depository key or that there were any shortages in the deposits supposedly made in the bank on January 22nd and January 25th. Another employee of Steak-

O-Rama testified that during the month of January, prior to January 25th, he had ridden home in the evening regularly with Fowler and Knapp and that they had regularly stopped after work to make deposits in the night depository before going home. This would tend to discredit defendant's contention that it was impossible to make a deposit because of a missing or misplaced depository key during January. There was evidence, however, that another key was obtained from the bank sometime during the early part of February. The record also contains other discrepancies in the testimony of the defendant, particularly with reference to a missing deposit bag. This was later found, according to the defendant's story, behind a refrigerator in the kitchen of the restaurant. Other testimony, however, was to the effect that the bag was not found behind a refrigerator but was in fact found under papers on a table or desk in the kitchen. There was also testimony that the refrigerator was placed against the wall on two sides in the kitchen and it would not have been possible to place a bag behind it.

Robert C. Scheinost, an employee of Vanice Pontiac-Cadillac Company, testified that on January 25th, Fowler signed a purchase agreement for a Pontiac Catalina on which he made a $350 cash downpayment. He described the cash downpayment as being made up of a "large hand-full of bills * * * probably $5.00s, $10.00s and $20.00s," which Scheinost stated "was a good handfull of money to carry around." Fowler had traded in a prior car, also purchased from Vanice, and he apparently had made a downpayment for that car also with $175 in cash.

Witnesses testified that there were others who had keys to the restaurant, and the drawers and cabinets; and that the defendant was very careless in leaving his keys lying around, and almost anyone could have had access to them. Defendant therefore claims that the evidence against him is almost wholly circumstantial

and there is no showing that the defendant was the specific one who committed the crime, but on the contrary shows that others could have committed the crime.

Although there was no eyewitness to the crime, except as to the money which should have been deposited on January 25th, there was ample circumstantial evidence upon which the jury could base a verdict of guilty. The evidence, although in some respects conflicting, was all presented to the jury for its determination under proper instructions of the court, including an instruction with regard to direct and circumstantial evidence, that being NJI No. 14.50. We find no fault with its decision. In State v. Lowrey, 187 Neb. 451, 191 N. W. 2d 600 (1971), we stated: "The activities of a thief ordinarily are secretive and are not usually carried out in the presence of witnesses. When the commission of the offense is carried out in such a manner, circumstantial evidence is necessarily the only evidence available and where there are many circumstances pointing to the guilt of the defendant the question is for the jury under proper instructions safeguarding the rights of the defendant." We think the same rule is applicable to the crime of embezzlement with which the defendant was charged and convicted. Also, in Sedlacek v. State, 166 Neb. 736, 90 N. W. 2d 340 (1958), we stated: " ' "Where in a criminal case the evidence is circumstantial, the circumstances established, must, to warrant a conviction, be such as to exclude every reasonable hypothesis except that of the defendant's guilt. But this rule merely requires exclusion of such hypotheses as are based on circumstances established by the evidence. It does not require the jury to acquit because of evidence which, if believed, would establish facts consistent with innocence, but which evidence the jury is justified in disbelieving." ' "

The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the State to support it. Glasser v. United States, 315 U. S.

60, 62 S. Ct. 457, 86 L. Ed. 680 (1942); Hamling v. United States, 418 U. S. 87, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974). We think the evidence in this case amply sustains the verdict of the jury under the rule above stated.

We now consider defendant's claim that the court erred in not granting a new trial on the ground of newly discovered evidence. The jury returned its verdict of guilty in this case on April 8, 1974, and the court found the defendant guilty of being a habitual criminal at a hearing held on April 29, 1974. The hearing on the motion for a new trial was commenced on May 17, 1974, and after a partial hearing was continued to May 27, 1974, for the purpose of attaining additional witnesses. It appears from the evidence adduced at that hearing that a Mr. Toney Redman, who was a part-time public defender in Lincoln, but not counsel for the defendant, received a phone call from a person who identified himself as "Mike Conrad," apparently confessing to the commission of the crime involved in this case. A week or two later Redman received a letter signed "Mike Conrad," postmarked May 23, 1974, admitted in evidence as exhibit A, apparently to the effect that the defendant was not guilty of the crime, but that he, the writer, was the guilty party. Also received in evidence at the trial was a letter dated April 29, 1974, from a "Mike Conrad," addressed to the trial judge, asking him to help Dick Fowler. In the letter Conrad states he had had a talk with Toney Redman, the public defender, and had written him confessing to the crime; and that he believed that Mr. Lahners, the county attorney, had suppressed the confession. He also stated that his attorney would get in touch with the judge shortly, which, however, did not occur. It was on the basis of these two letters that defendant filed his motion for a new trial on the ground of newly discovered evidence. Redman testified at the hearing that he had never seen the party who called himself "Mike Conrad," but had suggested to Conrad that he come to the office. He stated Conrad

was very vague and hesitant, and, in fact, would not meet with him. Redman later saw Mr. Lahners of the county attorney's office in the hall and discussed the matter. On cross-examination Redman was asked the question: "As a matter of fact, you do not know if it was the defendant himself who called you and used the name of Mike Conrad? Isn't that also true?" And the answer he gave was: "That is true." At that hearing the defendant, Richard Fowler, also testified. He was asked: "Do you know a Mike Conrad?" He answered: "It has been some time since I have been working with Steak-O-Rama; names just don't—I don't have any memory for names at all. Except for close friends." He further testified that he wasn't even certain there was such a person. It is interesting to note that notwithstanding Fowler's denials of knowing Mike Conrad, in the letter to Redman written by Conrad he makes reference to the fact that he and the defendant were in Omaha "doing our thing." Evidence was also adduced relative to the efforts of police and others to identify and locate the writer of the letter, Mike Conrad, but all parties were unsuccessful in doing so even after a rather extensive investigation. Of particular interest was the testimony of the witness Kevin Graham, who testified that after the trial of Richard Fowler was over he had occasion on the following Saturday to have a conversation with Fowler, who called him at his home. Fowler asked him if he had ever thought about taking a couple months vacation and Graham stated that he wouldn't mind taking a vacation. Fowler asked him if he ever heard of Kearney and told him that Kearney was "kinda like Boys Town" and that if Graham would do him a favor, the most that could happen was that Graham would get 6 months at Kearney. Fowler asked him to go down to the police station and confess that he took the money from Steak-O-Rama and "said they would probably give me like six months in Kearney or maybe lengthen my probation," and also told him that

while he was in Kearney, Fowler would file a lawsuit against Steak-O-Rama. He would sue for $300,000 and would settle out of court for $50,000 and give Graham half of it. Graham told him he would have to think about it because he was getting ready to make his final restitution payment, as he was on probation at that time. Fowler then told him that if he wanted to do it he should do it the next day about 8 o'clock, down at the jail and "just tell somebody that I wanted to confess to the crime." Graham did not tell his probation officer about it at the time. He denied calling Toney Redman about it and also denied writing the letters referred to, exhibits A and C.

We conclude that the trial judge was eminently correct in denying a new trial on the basis of the evidence adduced. A motion for a new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial court and unless an abuse of discretion is shown its determination will not be disturbed. Rains v. State, 173 Neb. 586, 114 N. W. 2d 399 (1962); State v. Evans, 187 Neb. 474, 192 N. W. 2d 145 (1971); State v. Wycoff, 180 Neb. 799, 146 N. W. 2d 69 (1966). There was clearly no abuse of discretion on the part of the trial judge. In addition, it is interesting to note that the proffered evidence would not have been admissible if presented during the trial of the case. In Barr v. State, 114 Neb. 853, 211 N. W. 188 (1926), this court ruled that in the trial of the defendant in a criminal action, a letter, written by a third person, in which he states that the writer, and not the defendant, committed the offense, is not competent as evidence in behalf of the defendant. Also in Mays v. State, 72 Neb. 723, 101 N. W. 979 (1904), the court held that an ordinary written statement of a third person that he was guilty of a crime of which the defendant was accused is hearsay evidence and therefore not admissible; and further held that an ordinary written statement of such third person that he committed the crime in question, which is

not sworn to, and is not preserved in the form of a deposition, is not competent, and should not be received as a defense to the prosecution. While the letters in this case were presented in support of a motion for a new trial, their value as evidence is extremely poor, and their validity subject to great scrutiny. The trial judge came to the correct conclusion.

We may deal rather summarily with the two remaining assignments of error made by the defendant. His claim that there is reversible error in the record because of the alleged fact the prosecution did not inform the defendant or his counsel of the purported confessions is without merit for two reasons. In the first place, the letters were received after the trial was over, and not during the trial. Secondly, defendant was obviously well aware of their existence, as it was defendant's own counsel, Mr. Erickson, who filed the motion for a new trial based on newly discovered evidence, upon which the extended hearing was subsequently held.

Defendant's last assignment attacks the constitutionality of the Habitual Criminal Act. This court has on numerous occasions upheld the validity of that act, both under the United States Constitution and under the Nebraska Constitution. See State v. Losieau, 184 Neb. 178, 166 N. W. 2d 406 (1969), and cases therein cited.

Finding no error, the judgment and sentence of the District Court is affirmed.

AFFIRMED.