STATE OF NEBRASKA, APPELLEE, V. LINDSAY A. FRENCH, APPELLANT.

262 N. W. 2d 711

Filed February 22, 1978. No. 41212.

Kirk E. Naylor, Jr., of Naylor & Naylor, for appellant.

Paul L. Douglas, Attorney General, and Judy K. Hoffman, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

SPENCER, J.

Appellant, Lindsay A. French, appeals from the denial of his motion for a new trial on the ground of newly discovered evidence under section 29-2101 (5), R. R. S. 1943. We affirm.

French was originally charged with four counts of delivery of a controlled substance. Two of the counts involved morning sales and two involved evening sales. Alibi evidence was adduced as to the

latter. The same undercover agent, Dennis Landrie, a convicted felon, testified to all the sales. The jury convicted French on the two morning sales but returned a verdict of not guilty on the evening sales. The conviction was affirmed by this court on December 24, 1975. State v. French, 195 Neb. 88, 236 N. W. 2d 832.

Subsequent to the affirmance by this court, defendant filed a motion for a new trial on the ground of newly discovered evidence under section 29-2101 (5), R. R. S. 1943. Defendant's motion is premised on Dennis Landrie's involvement with one Bruce Bamford.

In support of his motion for new trial the defendant offered: (1) Transcript of preliminary hearing in the case of State v. Bruce Bamford, held on June 18, 1975, where Dennis Landrie testified at preliminary hearing that Landrie bought amphetamines and cocaine from Bamford on December 20 and 28, 1974; (2) affidavit of Bruce Bamford denying the sales on said dates; (3) affidavit of Jerry Davis that he was the individual who sold Landrie the 4,000 amphetamine tablets for which Bamford was charged; and (4) other affidavits in support of Bamford's alibi defense as to both dates.

The trial court denied the motion for a new trial. It concluded defendant's evidence would not be admissible in the event of a retrial herein. It further found in any event it was not of such a character as to probably result in a different verdict for the defendant.

We have repeatedly held a motion for a new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial court and unless an abuse of discretion is shown its determination will not be disturbed on appeal. State v. Evans, 187 Neb. 474, 192 N. W. 2d 145 (1971).

The proposed newly discovered evidence which defendant offers as justification for a new trial con-

sists solely of affidavits used in an attempt to discredit the testimony of witness Dennis Landrie in a subsequent preliminary hearing in another matter. That defendant was bound over to District Court after the hearing. No trial was had therein because that case was subsequently dismissed by the court on motion by the county attorney for the reason that the memory of the key and principle witness for the State had dimmed sufficiently that the likelihood of a conviction had been appreciably altered.

We have held on numerous occasions that evidence which only tends to discredit a witness who testified at trial is not sufficient to justify a new trial. State v. Wycoff, 180 Neb. 799, 146 N. W. 2d 69 (1966). In Wycoff, the conviction was based partially upon the testimony of a witness who stated that the defendant was in fact in a tavern when he claimed not to be. In support of his motion for a new trial, Wycoff produced affidavits which challenged the credibility of the witness. What we said on that occasion is dispositive of the present case: "This court, in construing this statute (§ 29-2101, R. R. S. 1943), has laid down several rules applicable to this case. A motion for a new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial court and unless an abuse of discretion is shown its determination will not be disturbed. * * * New cumulative evidence tendered in support of a motion for a new trial must be so potent that, by strengthening evidence already offered, a new trial would probably result in a different verdict. * * * A new trial will not ordinarily be granted for newly discovered evidence which, when produced, will merely impeach or discredit a witness who testified at the trial."

French attacked the credibility of Landrie in his own trial. In this respect the alleged new evidence, even if we were to assume it to be admissible, would be cumulative. The jury chose to believe Landrie

on two of the counts. It held for French on the other two. We affirmed that judgment over French's argument the jury should have accepted all his evidence rather than only part of it. We held: "In jury cases, the jurors are the judges of the credibility of the witnesses and of the weight to be given their testimony and, within their province, they have the. right to credit or reject the whole or any part of the testimony of a witness in the exercise of their judgment."

In Finnern v. Bruner, 170 Neb. 170, 101 N. W. 2d 905 (1960), this court said: "The law does not, however, favor new trials on the ground of newly discovered evidence. * * * The newly discovered evidence must be of such a nature that if offered and admitted at the former trial it probably would have produced a substantial difference in result. Such evidence must be competent, material, and credible, and not merely cumulative. It must involve something other than the credibility of witnesses who testified at the former trial."

In reviewing the record, we cannot say the trial judge abused his discretion in holding the evidence, even if admissible, would not be so potent as to probably result in a different verdict. The burden was on defendant to show the alleged newly discovered evidence was of such substantial nature that if it had been received in the original trial, it would probably have changed the result. No such showing was made. The trial court, after a full hearing, came to the conclusion that the defendant's motion for a new trial was not meritorious. We cannot say he was wrong in this conclusion.

The judgment is affirmed.

AFFIRMED.

BRODKEY, J., dissenting.

I must respectfully dissent. I believe that the majority opinion, although it correctly sets forth several general principles of law, misapplies those prin-

ciples to the facts of this case, and ignores other applicable law. Under the particular facts of this case, it was error for the trial court to overrule defendant's motion for new trial.

Section 29-2101, R. R. S. 1943, provides that a new trial may be granted to a defendant for "any of the following reasons affecting materially his substantial rights: * * * newly discovered evidence material for the defendant which he could not with reasonable diligence have discovered and produced at the trial." See, also, State v. Atkinson, 191 Neb. 9, 213 N. W. 2d 351 (1973). There is no dispute whatsoever in this case that the evidence on which defendant relies was newly discovered evidence which he could not with reasonable diligence have discovered and produced at the trial. Therefore the only question presented is whether the new evidence was material and of sufficient importance and weight to warrant a new trial.

It will be helpful to scrutinize more closely the evidence on which defendant relies. In summary, the new evidence was that the informant Landrie had falsely accused, or attempted to "frame," one Bruce Bamford, an accused in a case analogous to the defendant's case. The evidence in question was presented in the form of affidavits in connection with defendant's motion for new trial. Those affidavits set forth the following facts. At a preliminary hearing in the Bamford case, Landrie testified under oath that Bamford had sold him 4,000 amphetamine tablets on December 20, 1974; and that Bamford had sold him ½ ounce of cocaine on December 28, 1974. The sales were allegedly made at a trailer court in Kearney, Nebraska. In Bamford, as was true in the present case, Landrie was the sole witness to the alleged crimes, and was working as a paid informer for the State Patrol.

Bamford contradicted Landrie's accusations with respect to both alleged sales. As to the first, Bamford stated that he was at his home at the relevant

time, and not at the trailer court. Three witnesses, as well as a telephone company record, supported Bamford's assertion. In addition, one Jerry Davis stated that it was he who sold 4,000 amphetamine tablets to Landrie on December 20, 1974, at the trailer court, although Davis was never charged with a criminal offense for that act.

As to the second alleged sale, Bamford stated that he had been in Colorado on the relevant date. Three witnesses and a motel receipt signed by Bamford supported this assertion. Furthermore, one Danny Anderson stated that on December 28, 1974, he delivered $\frac{1}{4}$ ounce of cocaine to Landrie, and one Pat Gifford stated that on the same date he observed Landrie adding $\frac{1}{4}$ ounce of baking soda to what Landrie represented to be cocaine. As noted previously, Landrie had accused Bamford of selling him $\frac{1}{2}$ ounce of cocaine on December 28, 1974. On May 21, 1976, the charges against Bamford were dismissed by the District Court on motion by the county attorney.

The above evidence was such that a jury could reasonably conclude that Landrie had falsely accused, or attempted to "frame," another defendant in an analogous case, during a relevant time period, while Landrie was employed as a paid informer. In the majority opinion this evidence is characterized as "cumulative," and also as evidence that would " 'merely impeach or discredit a witness who testified at the trial.' " I disagree. I believe that the new evidence was relevant to the issue of bias, a partiality of mind on the part of Landrie, and not merely to the issue of Landrie's reputation for truth and veracity or his credibility in general. The defendant did not attempt to attack Landrie for bias at trial by showing that he had falsely accused another defendant in a parallel case, but sought only to impeach Landrie's credibility in general. Therefore the new evidence is not simply cumulative.

Support of this position is found in Johnson v.

Brewer, 521 F. 2d 556 (8th Cir., 1975), a case on which defendant relies, but which is not referred to in the majority opinion. In Johnson, the defendant made an offer of proof at trial to show that the sole witness against him, a professional informant, attempted to "frame" another defendant in an analogous case. The trial court denied the defendant the opportunity to adduce such evidence at trial, and the defendant was convicted. The Court of Appeals for the Eighth Circuit granted a writ of habeas corpus and vacated the defendant's conviction.

The court first noted that the use of paid informants by the government, although perhaps necessary, is an "inherently dangerous procedure" to the extent that extensive precautions must be taken to insure that an innocent man should not be punished. The court noted that a variety of motives exist on the part of a paid informant to " 'produce as many accuseds as possible.' " 521 F. 2d at p. 560. In characterizing the evidence refused by the trial court, the court stated: "The offer here made was thus to show that the informant before the court and jury was completely insensitive to the obligations of his oath and that from motivations the origin of which we can only surmise, but nevertheless apparently existent, he had, as demonstrated in a parallel case, neither compunction nor scruple against 'framing' a man. We have difficulty in envisioning a situation responding more completely to the orthodox test of *bias*, the quality of emotional partiality." 521 F. 2d at pp. 560, 561. (Emphasis supplied.)

The court also found that the exclusion of evidence as to the attempt by the informant, the only witness to the alleged crime, to frame another defendant in a precisely parallel case, went beyond mere error with respect to rules of evidence, but was error of constitutional dimension. The essential point was that the jury must be given an opportunity to assess the evidence of the "frame-up" in the prior case in

whatever manner it wished. The court noted in conclusion that it was not passing upon the truth or falsity of the matters set forth in the offer of proof, but that they were neither immaterial nor collateral, and that the defendant was entitled to put them before the jury. See, also, Steinmark v. Parratt, 427 F. Supp. 931 (Neb., 1977), a case in which the court followed Johnson and found that it was error to deny a defendant the opportunity to present evidence from which the jury could conclude that a professional informant, the same Dennis Landrie, had falsely accused another person in a similar case.

Under these cases, the conclusion is inescapable that had the evidence at issue in the present case been available to the defendant and offered by him at the time of trial, it would have been reversible error for the trial court to exclude it from evidence and deny the defendant the right to impeach Landrie for bias. Furthermore, there can be no question that the evidence would have been admissible. Not only would the defendant have been able to attack Landrie for bias on cross-examination, he would not be bound by Landrie's answers, and could prove the alleged bias by extrinsic evidence. See, Johnson v. Brewer, *supra*, 521 F. 2d at 562; Smith v. Hornkohl, 166 Neb. 702, 90 N. W. 2d 347 (1958); Johnson v. Griepenstroh, 150 Neb. 126, 33 N. W. 2d 549 (1948); 3 Weinstein's Evidence, § 607 (03), at p. 607-17; McCormick, Evidence, § 40, at p. 81 (2d Ed., 1972); 3A Wigmore, Evidence, § 948, at p. 783 (Chadbourn Rev., 1970). Evidence indicating that a witness was consciously willing to falsify his testimony is always admissible to prove bias. 3 Weinstein's Evidence, § 607 (03), at p. 607-29.

As stated in Vassar v. Chicago, B. & Q. R. R. Co., 121 Neb. 140, 236 N. W. 189 (1931): "Cross-examination of a witness to show bias, hostility, or that he is actuated by a spirit of revenge is entirely distinct from impeachment, which is governed by its own

rules of evidence. * * * '* * * A jury would scrutinize, more closely and doubtingly, the evidence of a hostile than that of an indifferent or friendly witness. * * * Generally, on cross-examination of a witness, any fact may be elicited which tends to show bias or partiality, and if the witness denies the fact showing the bias or interest, the cross-examining party may call other witnesses to contradict the witness.' ''

Significantly, the evidence of the kind at issue in the present case has been characterized in the above cases as so material and important that its exclusion at trial constitutes error of constitutional dimension.

The general rules on which the majority opinion relies do not satisfactorily dispose of this case, and simply gloss over the fundamental issues. Landrie, an admitted convicted felon and a paid informant, was the sole witness to the alleged crimes. He testified that the defendant made sales to him both on the morning and the evening of January 7, 1975, yet witnesses, some of whom could be fairly characterized as disinterested, corroborated defendant's alibi with respect to the evening sales, and the jury acquitted the defendant on the charges arising from the alleged evening sales. Although the jury had the right to credit or reject the whole or any part of the testimony of Landrie in its role as the trier of fact, the verdict of acquittal alone, at least in the context of this case, raises a most serious doubt as to Landrie's credibility and lack of impartiality. See Steinmark v. Parratt, *supra*, 427 F. Supp. at p. 934. The credibility which the jury attached to Landrie's testimony must inevitably have determined the guilt or innocence of the defendant, but, at the time of trial, evidence of bias on the part of Landrie was not available to the defendant. In my opinion, had the evidence in question been presented to the jury, which apparently rejected Landrie's testimony with respect to the alleged evening sales, it would have affected the jury's conclusion with respect to the al-

leged morning sales, and probably would have produced a substantial difference in result. The materiality and importance of the new evidence under the particular and unusual facts of this case cannot be denied.

I recognize that the general rule is that a "new trial will not *ordinarily* be granted for newly discovered evidence which, when produced, will *merely* impeach or discredit a witness who testified at the trial." (Emphasis supplied.) State v. Wycoff, 180 Neb. 799, 146 N. W. 2d 69 (1966). This, however, is not an ordinary case, and the new evidence is material to the issue of Landrie's possible bias, not merely to his credibility in general or to his general reputation for truth and veracity. See Johnson v. Brewer, *supra*. This case is not analogous to the cases on which the majority opinion relies. In State v. Evans, 187 Neb. 474, 192 N. W. 2d 145 (1971), the evidence on which the defendant relied in moving for a new trial was only that which would have impeached one of several prosecuting witnesses. In State v. Wycoff, *supra*, the new evidence related only to a collateral matter not material to the guilt or innocence of the defendant. In the present case, both the evidence at issue, as well as its materiality and probable impact on the jury, are substantially different.

Since exclusion of the evidence, had it been available to and offered by the defendant at trial, would have constituted reversible error, I find no rational or consistent basis for concluding that no error occurred simply because defendant's only alternative was to move for a new trial because he did not discover the evidence until after his trial. In this case the jury's determination of the defendant's guilt or innocence inevitably rested on the credibility which it attached to the testimony of a paid informant, who was an admitted convicted felon. Such testimony is not necessarily false, nor is it necessarily true. The

essential point, however, is that in such a situation the jury must be given an opportunity to assess all material evidence before it reaches its decision. The only fair and just result is to grant the defendant a new trial and permit him the opportunity to present to the jury the evidence from which it could conclude that the informant was biased. I would reverse the judgment of the District Court and remand the cause for a new trial.

McCOWN and WHITE, C. Thomas, JJ., join in this dissent.

CLINTON, J., concurring.

I write this separate concurrence for two reasons: (1) Although I agree with the majority opinion, I do not believe it, in light of the dissent, adequately presents the issues involved, and (2) the dissenting opinion makes some assumptions that the affidavits make a prima facie case of a "frame up" when in fact at most the so-called newly discovered evidence simply presents questions of the relative credibility of various persons, including Bamford, as against the credibility of the witness Landrie, as to matters none of which are directly relevant in the case against French.

I would agree with the dissenting opinion if the showing made by French in support of his motion for a new trial on the ground of newly discovered evidence actually showed that Landrie had "framed" Bamford, or had lied under oath in a similar proceeding.

I do not believe that the dissent fully or fairly reflects the substance of the affidavits because, as noted above, the dissent assumes that which must be at least prima facie established. The case against Bamford was never tried. It was dismissed by the court on motion of the prosecution after the preliminary hearing.

The dissent makes the statement that in both the Bamford and the French cases, "Landrie was the

sole witness to the alleged crimes." This does not correctly reflect the record. It is true that at the preliminary hearing in the Bamford case Landrie was the only witness called. However, his testimony was that several other persons were present at the December 20, 1974, transaction, one of them being Jerry Davis, whose affidavit is one of those upon which French relies to support his claim of newly discovered evidence. Davis, in his affidavit, claims that he (Davis) is the one who, on December 20, 1974, delivered 4,000 amphetamine tablets to Landrie. We make note of this because it would indeed be strange for Landrie to place Davis and other witnesses at the scene if they were in fact not there, for to do so would simply supply the defense with a witness or witnesses who could contradict him.

It is elemental, of course, that "newly discovered evidence" must be both material and competent. Let us now examine some of the affidavits of Bamford's witnesses. As to both crimes charged, Bamford's defense would apparently be alibi, i.e., he was not present at the time and place the transactions are alleged to have occurred. As to the December 20, 1974, transaction, the affidavits of Ann Erickson and her mother, Jo Erickson, are plainly hearsay, consisting, in the case of Ann, of her testimony as to what Bamford, in a telephone conversation, told her of his whereabouts. The affidavit of Jo is to the effect that on the occasion in question Ann did have a telephone conversation with someone. Testimony of these two witnesses as demonstrated by affidavits is neither material nor competent.

The affidavit of Jerry Davis contains an acknowledgment that on December 20, 1974, he committed the felony of delivering a controlled substance. This admission in the affidavit cannot be used to establish the corpus of that crime. On the other hand, if he were called by Bamford as a witness (or by French in this case), he could refuse to testify at

all simply by exercising his Fifth Amendment right to remain silent.

The affidavit of Danny Anderson relative to the transaction of December 28, 1974, is similar to that of Davis. He swears that on December 28, 1974, he delivered cocaine to Landrie. Here again his affidavit cannot be used to establish the corpus of the crime which he acknowledges he committed. If he were called by Bamford (or by French in this case) as a witness, he could refuse to testify simply by taking the Fifth Amendment.

The remaining affidavits as to the December 28, 1974, transactions simply tend to establish the alibi of Bamford.

Two affidavits would indicate that Landrie "cut" the cocaine (apparently that which is the subject of the December 28 transaction) with baking soda. This seems immaterial with reference to the French case, but would tend to establish that Landrie may have been cheating the State, or perhaps dealing in drugs himself on the side.

The State's opposing affidavits attest to the reliability and trustworthiness of Landrie, based upon his past performance. These include the results of polygraphic tests submitted to by Landrie and by other persons who openly acknowledged they had sold drugs to Landrie. Bamford also submitted to a polygraphic examination. However, the examiner, an out-of-state expert, indicated that Bamford was uncooperative and attempted to affect the results of the test by controlled breathing. Bamford also removed the polygraphic attachments from his body before the test was completed. In a preliminary interview with the polygraph expert, Bamford acknowledged that he was in Colorado on December 27, 1974, buying controlled substances. These buys were apparently made from two of his alibi witnesses as to the December 28, 1974, transaction.

The trial court certainly did not abuse its discre-

tion in refusing to permit the "trial" of the Bamford case, as a part of a retrial of French's case. What French seeks to do in this case is to test the credibility of the informant, Landrie, in the French case by incorporating the Bamford case into it. What the jury would have been confronted with in that event was simply a swearing contest between a paid informant on the one hand and self-admitted dealers in drugs on the other, all with reference to matters not directly relating to French's guilt or innocence.

Whether the use of paid informants such as Landrie, a convicted felon, is right as a matter of public policy must be determined by the executive branch of government.

We should not depart from established rules simply because Landrie has been the subject of much public discussion and of Legislative investigation. For reasons I have above delineated, I believe the majority opinion properly applies the appropriate and established rules.