STATE OF NEBRASKA, APPELLEE, v. RICHARD W. THOMPSON, APPELLANT.

251 N. W. 2d 387

Filed March 16, 1977. No. 40865.

Johnston, Grossman, Johnston & Barber, for appellant.

Paul L. Douglas, Attorney General, and Harold Mosher, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, MC-COWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

The defendant and appellant herein, Richard W. Thompson, was charged with first degree sexual assault under section 28-408.03, R. R. S. 1943, in an information filed in the District Court for Lancaster County on February 11, 1976. The defendant waived a jury trial; and after trial to the court, commencing April 21, 1976, was found guilty as charged. The defendant was sentenced to a prison term of not less than 18 months nor more than 3 years. The defendant has now appealed from his conviction, contending that admissions made by him to the police were improperly admitted into evidence, and that there was insufficient corroboration of the prosecutrix'

testimony with regard to the element of force. We affirm.

On January 5, 1976, at approximately 4 p.m., the defendant went to an apartment complex in Lincoln, Nebraska, to visit a girl, Jeannie, who lived in an apartment next door to the prosecutrix. The prosecutrix heard the defendant knocking, came to her door, and advised the defendant that Jeannie was not at home. She and the defendant then began to converse, and she invited him into her apartment to wait for Jeannie to return.

The defendant remained in prosecutrix' apartment until approximately 6 p.m. During this time the two parties engaged in kissing, and possibly petting, and eventually the defendant propositioned her to have sexual intercourse with him. She rejected the defendant's proposal, but the defendant continued to try to persuade her. The defendant then left the apartment, telling prosecutrix that he was going to have dinner, and that he might return later. He urged prosecutrix to reconsider her refusal while he was gone. The defendant went to several bars after he left prosecutrix' apartment, and returned at approximately 1:30 a.m. on January 6, 1976. Prosecutrix who had retired, awoke and permitted the defendant to enter the apartment.

The prosecutrix and the defendant gave conflicting versions of what occurred next. Prosecutrix stated that the defendant again tried to persuade her to engage in sexual intercourse, and began to make passes at her, but that she refused his advances. She testified that the defendant then took a knife from his pocket, and asked whether the knife would "make any difference." The defendant then held the knife to prosecutrix' neck, removed her undergarments, and forced her to submit to intercourse. She stated that the defendant penetrated her, and that he subsequently ejaculated on the bedsheet. Afterwards, the defendant threatened to kill her if

she called the police, and forced her to sign a note stating that her actions had been voluntary. The defendant also forced her to swear on the Bible that she would not call the police, and then left.

The defendant testified that prosecutrix first brushed off his passes, but that she eventually accepted them. He stated that she had voluntarily engaged in intercourse, but that she requested him to stop shortly after he penetrated her. The defendant did so, and ejaculated on the sheet. The defendant admitted having a knife when he was in the apartment, but stated that he did not threaten her with the knife until she threatened to call the police, after intercourse had occurred. According to the defendant, he took the knife from his pocket, laid it on a table, and told prosecutrix: ''You know I could kill you with this knife but I don't want to and I am not going to. But you have me really scared, because you can hurt my family and me and my parole could be violated by you making these statements that aren't true.'' The defendant stated that she then wrote a note to the effect that her actions had been voluntary, but that he did not accept the note because he wanted a promise that she would not call the police. The defendant testified that prosecutrix did so promise, but that he did not force her to swear on the Bible that she would not report the incident.

Prosecutrix did promptly report to the police that she had been raped by the defendant. Police officers went to the defendant's home at 8 a.m. on January 6, 1976, and took him to the police station for questioning. The defendant initially denied that he had returned to prosecutrix' apartment in the early morning hours of January 6, 1976, but ultimately gave the following written statement which was read, corrected, and initialed by Thompson; and which was admitted into evidence at the trial: ''I returned to the apartment about 1:30 in the morn-

ing and I knocked on the door and she asked who was there and I told her that it was Rick. She opened the door and I asked her if I could come in and she opened the door and allowed me to come into her apartment. After entering her apartment we sat down on the bed and talked and I made two or three passes which she brushed off and we continued to talk and I made more passes which she accepted. I became very sexually aroused and from the way that she was acting I felt that she was too. At this time, I attempted to have intercourse with her. The sexual play was proceeding in a fashion that led me to believe that we were going to have intercourse. Things proceeded on until just before the consummation of this act. When (sic) she said that she didn't want to do anything. By this time, I was sexually aroused to the highest point before intercourse. Through her actions I felt that she was playing with me so I asked her if a knife made *nay* (sic) difference in submission. (R.T.) She said yes it did. I then began to have intercourse with her. I was barely inside of her when she said no don't I don't want to do any of this. At that time I extracted myself from her and climaxed on the bed. She then said that she was going to call the police and say that I raped her. I became very uptight and very scared and I asked her not to call the police, said that I didn't rape her that she knew that I didn't but yet she persisted in saying that she was going to call the police. At this time I told her that her calling the police would hurt my family, my wife and two children, and I told her 'I could kill you (R.T.) with this knife, but I don't want to and I'm not going to, just *pelase* (sic) promise (R.T.) me that you won't call the police please.' The knife was bought (sic) out just before the act of intercourse and put back in my pocket soon after that. The knife was a bluff because I was so sexually aroused and I thought she was playing back. During the conversa-

tion of not calling the police the knife was put away and there was no threat. After talking with her for 15 minutes and to half an hour (R.T.) I asked her again please not to call the police because she would be causing me (R.T.) alot (sic) of trouble for nothing because of the way that things happened it couldn't be rape. At this time, she promiesd (sic) that she wouldn't call the police and I left.''

The defendant also advised the police where they could find the knife which he held on the night of the incidents involved in this case. The knife was recovered and admitted into evidence at defendant's trial. There was also evidence that there was semen stains on the bedsheet found in the prosecutrix' apartment immediately after she called the police. Finally, police officers testified at trial in regard to certain oral statements made to them by the defendant after his arrest. Other facts relevant to the defendant's assignments of error will be discussed below.

The defendant contends on appeal that the District Court erred in (1) finding that written and oral admissions made by the defendant to the police were voluntarily, intelligently, and understandingly given; (2) determining that the oral admissions of the defendant were properly admissible when his admissions had finally been reduced to a written statement; (3) finding that the testimony of the prosecutrix was sufficiently corroborated in regard to the element of force necessary to sustain a conviction; and (4) failing to dismiss the case after both the conclusion of the State's evidence and all the evidence. We will discuss these contentions in the order they are presented.

The evidentiary use of incriminating statements made by a defendant to the police while in police custody is permissible when the statements are the product of a rational intellect and a free will, and when the statements are given voluntarily, know-

ingly, and intelligently, after the required Miranda warnings have been given. State v. McDonald, 195 Neb. 625, 240 N. W. 2d 8 (1976); Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The determination of whether a statement was voluntarily made turns on the consideration of the totality of the circumstances present in each case. State v. McDonald, *supra;* Schneckloth v. Bustamonte, 412 U. S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973).

The defendant in this case concedes that he was fully advised of his rights, which he understood, before making any statements to the police. He initially denied sexual involvement with the prosecutrix, stating that he did not return to her apartment on January 6, 1976. He later changed this statement, stating that prosecutrix had voluntarily had intercourse with him. Finally, he stated that he had threatened her with a knife in order to get her to comply with his demands. All the above statements were oral, and were testified to by the officers who questioned the defendant. The defendant then made the written statement which was quoted earlier in this opinion.

The defendant challenges the admissibility of his admissions on the ground that they were the product of inducements made by the police. At the suppression hearing, the defendant testified that police officers made two promises to him in order to obtain his statement: (1) That if he made a statement he would be charged only with simple assault; and (2) that if he made a statement he would be promptly arraigned and allowed to go home, but that if he refused, he would be thrown in jail. Police officers testified that no such promises were made. They stated that they had told the defendant of the minimum and maximum charges that could be filed in the case; but that the prosecutor would be the official who would determine what charges to file.

They also responded to the defendant's questions of what would happen if no statement was made, but did not promise him that he would be released if he did make a statement. They did advise him that he would remain in jail until the prosecutor determined what charges should be filed, and until he was arraigned. The interrogating officer also advised the defendant that his parole officer would have to be contacted before he could be released.

The trial court found that the defendant had freely and voluntarily waived his rights and given the statements, and in so finding considered all relevant circumstances, including the fact that the defendant had had previous experience with police questioning. "A finding of the trial court that a statement of an accused is voluntary will not ordinarily be set aside on appeal unless the finding is clearly erroneous." State v. McDonald, *supra*. We agree with the trial court that the statements of the defendant were freely, voluntarily, and intelligently given, and that finding was clearly not erroneous. The defendant was fully advised of his rights, understood them, and had prior experience with police questioning. The trial court weighed the credibility of the witnesses at the suppression hearing and found that the statements were not the product of inducement or promises. There is no merit to this assignment of error.

The defendant next contends that his oral admissions were inadmissible, even if made voluntarily, arguing that where, subsequent to the making of multiple inconsistent admissions, a party makes a definite selection among them, it is only that selection which should be admissible. Under this theory the defendant contends that only his written admission was admissible.

None of defendant's authorities support this proposition. The form of a statement, as oral or written, is without effect in the determination of its admissibility as an admission. 29 Am. Jur. 2d, Evidence, §

602, p. 657. This court has previously held that where the evidence tends to prove that a defendant has orally admitted his guilt, it is not error for the trial court to admit a written confession of substantially the same tenor which was voluntarily made and signed by the defendant subsequent to such oral admission. King v. State, 108 Neb. 428, 187 N. W. 934 (1922). Both oral and written statements of a defendant are admissible if voluntary. United States v. Cohen, 448 F. 2d 654 (8th Cir., 1971). The oral statements by the defendant in this case were made prior to the time he gave his written statement, and were distinct and separate from the written statement. Both the oral and written statements were competent evidence, and it was not error to admit the oral statements into evidence.

The defendant's next contention is that the testimony of the prosecutrix was not sufficiently corroborated as to the element of force required to prove the charge in the information. Section 28-408.03, R. R. S. 1943, provides that: "A person shall be guilty of sexual assault in the first degree when such person subjects another person to sexual penetration, and (a) overcomes the victim by force, threat of force, express or implied, coercion, or deception * * *." There is no merit to this contention.

It is true that the testimony of the prosecutrix alone and uncorroborated by any other evidence is not sufficient to sustain a conviction for rape. State v. Fisher, 190 Neb. 742, 212 N. W. 2d 568 (1973). "In this state, however, it is not essential that the prosecutrix be corroborated by other witnesses as to the particular acts which constitute the offense. It is sufficient if she is corroborated as to material facts and circumstances which tend to support her testimony as to the principal fact in issue." State v. Ferguson, 188 Neb. 330, 196 N. W. 2d 374 (1972). Cf., Pew v. State, 164 Neb. 735, 83 N. W. 2d 377 (1957); and Comment, Nebraska's Corroboration Rule, 54

Neb. L. Rev. 93, 105 (1975). There was clearly sufficient corroboration of the prosecutrix' testimony in this case. First, the defendant's oral and written statements to the police not only corroborate the prosecutrix' testimony, but essentially provide an identical version as to what happened. This court has previously held that admissions of a defendant are sufficient corroboration of a prosecutrix' testimony. Miller v. State, 169 Neb. 737, 100 N. W. 2d 876 (1960). Secondly, the prosecutrix immediately reported the incident to the police, a fact which is relevant to the issue of corroboration. State v. Ferguson, *supra*. Thirdly, semen stains were found on the bedsheet in the prosecutrix' apartment, a fact which supports the prosecutrix' version of what occurred. Finally, the defendant admitted that he was in possession of a knife on the night of the incidents involved in this case. These facts more than meet the requirement that the prosecutrix' testimony be corroborated as to material facts and circumstances which tend to support her testimony, and from which, together with her testimony as to the principal fact, the inference of guilt may be drawn. State v. Garza, 187 Neb. 407, 191 N. W. 2d 454 (1971); State v. Ferguson, *supra*.

Finally, the defendant contends that the trial court erred in failing to dismiss the case against the defendant at the close of the State's evidence, and at the close of all the evidence. In support of this contention the defendant argues that the trial court erred in resolving the issue of the credibility of the witnesses in favor of the prosecutrix. In determining the sufficiency of the evidence to sustain a conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence. State v. Miller, 194 Neb. 215, 231 N. W. 2d 140 (1975). In a criminal action, this court will not interfere with a verdict of guilty based on conflicting evidence unless, as a

matter of law, evidence is so lacking in probative force that it is insufficient to support the finding of guilt beyond a reasonable doubt. State v. Corfield, 189 Neb. 163, 201 N. W. 2d 818 (1972). In a jury-waived action, the judgment of the District Court on the facts has the same force as a jury verdict and will not be set aside on appeal if there is sufficient competent evidence to support it. Burhoop v. Pegram, 194 Neb. 606, 234 N. W. 2d 828 (1975); Siefford v. Housing Authority, 192 Neb. 643, 223 N. W. 2d 816 (1974). The verdict of a jury must be sustained if there is evidence, taking the view most favorable to the State, to support it. State v. Fowler, 193 Neb. 420, 227 N. W. 2d 589 (1975); State v. Lacy, 195 Neb. 299, 237 N. W. 2d 650 (1976). The evidence in this case clearly supports the verdict of the trial court, and there was no error in failing to dismiss the case against the defendant at the conclusion of the evidence.

The defendant's assignments of error are without merit, and the judgment of the District Court is affirmed.

AFFIRMED.