STATE OF NEBRASKA, APPELLEE, V. ROBERT W. TIFF,
APPELLANT.

260 N. W. 2d 296

Filed December 7, 1977.   No. 41291.

T. Clement Gaughan and Richard L. Goos, for appellant.

Paul L. Douglas, Attorney General, and Judy K. Hoffman, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BRODKEY, J.

Robert W. Tiff, defendant and appellant herein, was charged in the District Court for Lancaster County with sexual assault in the first degree under section 28-408.03, R. R. S. 1943; and with being an habitual criminal under section 29-2221, R. R. S. 1943. Defendant filed a plea in abatement and moved to dismiss the charges on the ground that the District Court for Lancaster County had no jurisdiction because the alleged sexual assault allegedly took place in Gage, rather than Lancaster, County. The motion was overruled. Defendant pled not guilty, and trial was had before a jury, which found the defendant guilty of sexual assault in the first degree. Defendant's motions to dismiss on the grounds of insufficient evidence and improper venue were overruled. A separate hearing was held pursuant to section 29-2221, R. R. S. 1943, on the habitual criminal charge, and thereafter the defendant was found guilty of being an habitual criminal. Defendant has now appealed to this court, contending that his convictions were not sustained by sufficient, admissible evidence; that the trial court lacked jurisdiction over the defendant; and that certain venue statutes relevant to criminal proceedings are unconstitutional, particularly as applied to the defendant in this case.

The facts relevant to this appeal are as follows. At approximately 8 p.m. on May 2, 1976, the prosecutrix and her roommate, Christi Leader, went to a tavern in Emerald, Nebraska, which is a short distance west of Lincoln. The two women shared an apartment in Lincoln, and Leader drove her automobile to Emerald since the prosecutrix, who was al-

most 20 years old at the time, had never learned to operate a motor vehicle. The tavern was crowded, and the defendant and one Dan Swiler, neither of whom the prosecutrix had previously met, offered to let the two women sit at their table. Leader accepted the invitation, but the prosecutrix only left her purse and jacket at the table, and went to seek out friends and dance. Although there was a dispute at trial as to how often the prosecutrix returned to the table during the course of the evening, the record reflects that any contact she had with the defendant was minimal, and that she spent most of the evening away from the table. There was also a dispute as to whether the prosecutrix was consuming alcoholic beverages or soft drinks, but in any event it does not appear that she was intoxicated, even if it is assumed that the defendant was correct when he stated that he saw the prosecutrix consuming beer. Swiler testified that the defendant had 15 to 16 cans of beer during the evening, but the defendant stated that he had only 7 or 8 cans.

At closing time, about 1 a.m. on May 3, 1976, the prosecutrix returned to the table and told Leader that she wished to go home. The prosecutrix went ahead to Leader's automobile, and shortly thereafter the defendant came with Leader's car keys and told her that he was to drive her home because Leader was going to ride with Swiler. Leader and Swiler drove by and told the defendant to follow them to Leader's and the prosecutrix' apartment in Lincoln. The defendant followed the Swiler car briefly, but lost it, and eventually turned on to a gravel road and drove south.

After traveling for a disputed amount of time, the defendant stopped the car and attempted to kiss the prosecutrix. She stated that she was scared, resisted defendant's advances, asked him to take her home, and attempted to get out of the car three different times, but was prevented from doing so by the

defendant. The defendant acknowledged that the prosecutrix was not accepting any of his advances at the time of the first stop. The defendant then drove farther to the south on country roads, again for a disputed amount of time, and stopped the car for a second time. Although the prosecutrix exhibited confusion when locating the place of the second stop on a map at trial, she placed the car well within the borders of Lancaster County at all times. The defendant testified that the location was near Beatrice, in Gage, rather than Lancaster, County.

The defendant once more attempted to kiss the prosecutrix, and she stated that she resisted and again attempted to get out of the car three times. She testified that the defendant grabbed her left arm at the elbow and said that she "better not try to get out again or else." The prosecutrix acknowledged that the defendant had no weapon, and that he did not specifically threaten to kill her, but stated that she was scared and decided to submit to the defendant because she was afraid of what he would do if she refused. She testified that the defendant removed her clothing and engaged in intercourse, against her will. The defendant admitted that the act of intercourse had taken place, but stated that the prosecutrix consented and willingly assisted in completing the act. He denied that the prosecutrix had attempted to get out of the car or that he had threatened her.

The defendant then drove toward Lincoln, and went through Roca, Nebraska, where the prosecutrix formerly resided. The prosecutrix stated that she attempted to jump out of the car in Roca because she was afraid of what the defendant might do, and she thought that this might be her only chance to escape. The defendant attributed her attempt to leave the car in Roca as being due to her anger over his refusal to drive on highways, as opposed to gravel roads, because of his fear that he

would be picked up for driving while intoxicated. The defendant grabbed the prosecutrix as she attempted to leave the car, but she succeeded in leaving the vehicle, and ran to the residence of people she knew who lived at Roca. One of these people described the prosecutrix as being hysterical and shaken, and she told them that she had been raped. The prosecutrix called her former boyfriend, who came to get her and took her home. Shortly thereafter the alleged rape was reported to the police. Meanwhile, the defendant drove back to Lincoln, left Leader's automobile in a parking lot, stayed with a friend the next day, and then went to Iowa, allegedly to look for work. He stated that he could not and did not return the Leader car because he did not know where Leader lived and did not know her last name, and his attempts to contact Swiler were unsuccessful.

Police officers testified that the prosecutrix was shaken, was crying, and was extremely upset when they responded to the report of the alleged crime. Bruises and scratches were found on the prosecutrix' leg and left arm. One witness stated that she was upset for at least 2 days after the incident.

Defendant sought to impeach the prosecutrix' testimony regarding lack of consent by evidence regarding her sexual experiences prior to the alleged rape in this case. Prior to trial, the prosecutrix stated at the taking of a deposition that she had engaged in sexual intercourse with six men prior to May 3, 1976, although she could not remember the names of three of these men. At the in camera hearing held in this case pursuant to section 28-408.05, R. R. S. 1943, to determine the relevance of evidence of the prosecutrix' past sexual conduct, the proxecutrix stated that she had had relations with three men prior to May 3, 1976. She stated that she had dated each of these three men at least 1 month before having relations with them, and one of them

was a boyfriend whom she had dated for nearly a year. She stated that her testimony at the deposition in regard to six men was inaccurate, and that she had been confused at the time of the deposition. After the in camera hearing, the trial court determined that the previous voluntary sexual activity of the prosecutrix was relevant to the issue of consent. At trial, the prosecutrix reiterated the testimony she had given at the in camera hearing with respect to prior sexual activity with three men. The defendant brought to the attention of the jury the prosecutrix' prior inconsistent statement regarding six men through cross-examination.

The defendant also presented one Hubert Countryman as a witness, who testified that he had dated the prosecutrix and had sexual relations with her, and that on one occasion both he and another man had had a sexual encounter with the prosecutrix at the same time. He also stated that he was known as "Russ" to the prosecutrix. The prosecutrix testified that she had once dated a "Russ," but that she did not have relations with him, and that she never had a sexual encounter with two men at the same time.

The defendant also sought to impeach the prosecutrix by showing that she had given prior inconsistent statements with respect to the last time she had engaged in intercourse prior to the alleged rape. The prosecutrix attributed the inconsistent statements to her confusion at the time she made them. Finally, the defendant sought to impeach the prosecutrix by showing that her testimony there was a full moon on the night of the alleged rape was false. An astronomer testified that the moon on the night in question was nearly a new moon in a crescent shape, and not a full moon.

As previously stated, the jury found the defendant guilty of sexual assault in the first degree, and defendant's motions for a directed verdict and to dismiss were overruled.

At the hearing on the habitual criminal charge, the State introduced in evidence court and prison records showing that the defendant had been twice convicted of a crime, sentenced, and committed to prison for terms of not less than 1 year for each crime. The defendant objected to the admission in evidence of one of these records on the grounds that the record did not show that his guilty plea in the former case was voluntary and that he had effectively waived his right to counsel. A verbatim record of the arraignment at which the guilty plea was accepted in the former case was received in evidence, and the trial court found that the defendant had effectively waived his rights in pleading guilty. The court overruled defendant's objections, and found the defendant to be an habitual criminal.

Defendant first contends that his conviction of sexual assault in the first degree must be reversed because the evidence was insufficient and because the State used perjured testimony to secure that conviction. Defendant argues in his brief that the credibility of the prosecutrix was so severely impeached that his conviction cannot stand "in light of her contradictory, misleading, false and perjured testimony. For the jury to have given any credence to her testimony, it would have had to necessarily disregard the court's instruction on the credibility of witnesses." The defendant also argues that the State was fully aware that the prosecutrix was going to give perjured testimony. The testimony to which defendant refers is primarily that concerning the prosecutrix' prior sexual behavior.

There can be no doubt that the prosecutrix made inconsistent statements at various stages of the proceedings below with respect to her past sexual conduct. It is also true that her testimony that there was a full moon on the night in question was questioned by defendant's expert witness, an astronomer, who stated that there was no full moon on that

night. The inconsistent testimony of the prosecutrix, however, was not necessarily tantamount to perjury. The record in this case does not reflect that there was a knowing use of perjured testimony by the prosecutor, as was the situation in the case on which defendant relies. See United States ex rel. Washington v. Vincent, 525 F. 2d 262 (2d Cir., 1975). The prior inconsistent statements of the prosecutrix and some of her testimony at trial certainly raised an issue as to her credibility, which was presented to the jury, but it is not the province of this court to pass on the credibility of witnesses on appeal. See, State v. Thompson, 198 Neb. 48, 251 N. W. 2d 387 (1977); State v. Ferguson, 188 Neb. 330, 196 N. W. 2d 374 (1972); State v. Partee, 199 Neb. 305, 258 N. W. 2d 634 (1977). Defendant's contention on this issue is without merit.

It is also apparent that the evidence was sufficient to sustain the conviction. In determining the sufficiency of the evidence to sustain a conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the jury. The verdict of the jury must be sustained, if, taking the view most favorable to the State, there is sufficient evidence to support it. State v. Partee, *supra*. Although, as indicated above, the testimony of the prosecutrix was impeached in certain respects, it cannot be said that it was so implausible or so discredited that a verdict should have been directed in favor of the defendant. The testimony of the prosecutrix was corroborated as to the material facts and circumstances which tend to support it. See State v. Thompson, *supra*. She, for example, reported the incident promptly, there were scratches on her arm and a bruise on her leg, and she was visibly distraught afterwards. The evidence does not establish that she even exhibited an interest in the defendant

at the tavern, and it was not her suggestion that he drive her home. The credibility of the prosecutrix was an issue for the jury, and the evidence was sufficient to present a jury question as to whether the defendant was guilty as charged. State v. Thompson, *supra;* State v. Ferguson, *supra.*

Defendant focuses on the evidence that the prosecutrix was a "promiscuous" woman who had engaged in sexual intercourse approximately 100 times with different men prior to the alleged rape. He contends that the jury should have been instructed that the evidence of the prosecutrix' prior sexual conduct implied the "probability of consent" on her part in this case. See Frank v. State, 150 Neb. 745, 35 N. W. 2d 816 (1949).

Section 28-408.05, R. R. S. 1943, enacted after Frank v. State, *supra,* provides that specific instances of prior sexual activity between the victim and any person other than the defendant shall not be admitted in evidence in sexual assault cases "unless consent by the victim is at issue, when such evidence may be admitted if it is first established to the court at an in camera hearing that such activity shows such a relation to the conduct involved in the case and tends to establish a pattern of conduct or behavior on the part of the victim as to be relevant to the issue of consent." In the present case such evidence was admitted. The trial court instructed the jury that this evidence should be considered "solely for the purposes of determining whether consent was given, and determining the credibility of her testimony relating to force, coercion, or deception used by Defendant in accomplishing his purpose and her claimed resistance thereto."

With the enactment of section 28-408.05, R. R. S. 1943, the Legislature has adopted a stricter rule than was formerly the case regarding the admissibility of evidence of a sexual assault victim's past sexual conduct, and regarding the purpose for which such

evidence may be introduced. That section does not provide that prior sexual activity implies consent on the part of the prosecutrix. Although Frank v. State, *supra,* indicates that evidence of the prosecutrix' prior sexual conduct may be admitted for "the purpose of inferring the probability of consent," it does not hold that the jury should be instructed that such evidence in fact implies consent on the part of the prosecutrix. The jury in this case was instructed in accordance with section 28-408.05, R. R. S. 1943, and was advised that the evidence was admitted for the purposes of determining whether consent was given and whether the prosecutrix' testimony regarding consent was credible. The instruction was adequate, and defendant's contention to the contrary is without merit.

Defendant next contends that various actions on the part of the prosecutor denied him a fair trial. In his closing argument, the prosecutor referred to the defendant as a "drunken, thirty-six year-old man." During the trial, the prosecutor told the prosecutrix he was sorry that she had been placed on trial. The trial court ordered the jury to disregard this remark. Finally, the prosecutor asked the defendant on cross-examination if he had had much time to think about the alleged rape, and the prosecutor stated that "I would think about it if I was in your situation."

Insofar as the prosecutor's remarks during closing argument are concerned, they do not appear to constitute reversible error. This court recently considered analogous remarks in State v. Costello, *ante* p. 43, 256 N. W. 2d 97 (1977), where in an insufficient fund check case the prosecutor referred to the defendant as a "bad check artist" and a "paper hanger." Although this court disapproved such statements, it found that they were neither so inflammatory nor so misleading as to require a mistrial, particularly since there was ample evidence

that the defendant had written an insufficient fund check. The same conclusion is appropriate in the present case. The evidence clearly supported the view that the defendant was very intoxicated on the night in question, and although the prosecutor's reference to the defendant as a drunken man should have been avoided, it was not so prejudicial that a new trial is required. State v. Costello, *supra.*

The other remarks of the prosecutor during the trial also do not warrant a reversal of defendant's conviction. The one remark was stricken from the record, and the other does not appear to have inflamed the jury against the defendant. Although the prosecutor was less than artful at times, it does not appear that his conduct was meant to, or did, inflame the prejudices or excite the passions of the jury against the defendant. See, State v. Atwater, 193 Neb. 563, 228 N. W. 2d 274 (1975); State v. Davis, 185 Neb. 433, 176 N. W. 2d 657 (1970). Under the circumstances of this case, a new trial is not required. State v. Costello, *supra.*

Defendant's contention that the District Court for Lancaster County did not have jurisdiction in this case because the sexual assault allegedly occurred in Gage, rather than Lancaster, County is clearly without merit. Although section 29-1301, R. R. S. 1943, sets forth the general rule that all criminal cases shall be tried in the county where the offense was committed, section 29-1301.01, R. R. S. 1943, provides that if an offense is committed against the person of another, the accused may be tried in the county in which the offense is committed, or in any county into or out of which the victim may have been brought in the prosecution of the offense, or in which an act is done by the accused in promoting or aiding in the commission of the offense. In addition, section 29-1301.02, R. R. S. 1943, provides that when the offense is committed in an automobile, the accused may be tried in any county through which the car

passes in the course of its trip, or in the county in which the trip terminates. The trial court instructed the jury in accordance with the above statutes, and defendant did not object to that instruction.

It is undisputed that the automobile trip in the present case originated and concluded in Lancaster County, and therefore venue was proper under the above statutory provisions, regardless of where the actual sexual assault occurred. See State v. Garza, 191 Neb. 118, 214 N. W. 2d 30 (1974). Defendant's failure to object to the instruction concerning venue prohibits him from now contending the instruction was erroneous. See, State v. Cinema 16, Inc., 197 Neb. 675, 250 N. W. 2d 633 (1977); State v. Lynch, 196 Neb. 372, 243 N. W. 2d 62 (1976). Finally, contrary to defendant's contention, the venue statutes referred to above are not unconstitutionally vague on the ground that they permit a criminal trial of an accused in a different county than the county in which the actual offense was committed. Defendant cites no authority to support this assertion, and there appears to be no precedent supporting the proposition that venue statutes such as those in Nebraska are unconstitutional.

Defendant's final contention is that the evidence was insufficient to sustain his conviction of being an habitual criminal because his plea of guilty resulting in a prior conviction, relied on by the State in the habitual criminal proceedings, was not constitutionally valid. It is undisputed that, in addition to a conviction and sentence for robbery, court and prison records show that the defendant was convicted of the offense of motorcycle theft in 1971 after entering a guilty plea. Defendant contends that the plea was not valid because he did not voluntarily waive his right to counsel, and because he was not advised of all the rights he was waiving by pleading guilty.

The State contends on appeal that the defendant may not collaterally attack a former plea in an ha-

bitual criminal proceeding where he has not attacked it on direct appeal or in a post conviction proceeding. See People v. Hendrick, 52 Mich. App. 201, 217 N. W. 2d 112 (1974). The defendant contends that he may; and that if his plea of guilty in the former case was not voluntary, the conviction entered thereon may not be used against him in an habitual criminal proceeding. See, State v. Harig, 192 Neb. 49, 218 N. W. 2d 884 (1974); Losieau v. Sigler, 406 F. 2d 795 (8th Cir., 1969), cert. den., 396 U. S. 988, 90 S. Ct. 475, 24 L. Ed. 2d 452 (1969). We need not, however, resolve that issue in the present case because a verbatim record of the arraignment at which defendant's plea of guilty was accepted in the prior case was received in evidence at the hearing in this case, and that record conclusively shows that defendant was advised of his rights and that he would be waiving certain rights by pleading guilty. The defendant was specifically advised that he could have a lawyer appointed and that the county would pay for the cost, but he waived his right to an attorney. The information was read in its entirety to the defendant, and he stated that he understood the charges against him, and that he had in fact stolen a motorcycle. A review of the arraignment indicates that the defendant was fully advised of his rights, understood them, and voluntarily waived them, and then pled guilty. The plea in the former case was knowing, voluntary, and intelligent under the standards set forth in State v. Turner, 186 Neb. 424, 183 N. W. 2d 763 (1971).

Defendant contends that the prior conviction was invalid because there is no record indicating that at the time of sentencing the trial court renewed its offer of assistance of counsel at the State's expense. In State v. Harig, *supra,* the defendant made the same contention and this court held that if a defendant has voluntarily waived his right to counsel at the arraignment at which a plea of guilty was entered,

the trial court is not required at the subsequent sentencing proceeding to again apprise the defendant of his right to counsel, so long as nothing has intervened between the arraignment and the sentencing that should cause the waiver at the arraignment to be ineffective for the purposes of the sentencing proceeding. Therefore, defendant's contention is without merit. State v. Harig, *supra*.

We have carefully reviewed the record and find no errors. Therefore the judgment of the District Court is affirmed.

AFFIRMED.