STATE OF NEBRASKA, APPELLEE, v. WILLIE BROOKS HAYNES, APPELLANT.

182 N. W. 2d 199

Filed December 23, 1970. No. 37563.

A. Q. Wolf and Bennett G. Hornstein, for appellant.

Clarence A. H. Meyer, Attorney General, and Chauncey C. Sheldon, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SMITH, J.

A jury found defendant guilty of robbery and of using a firearm in commission of a felony. He asserts through counsel appointed on appeal that (1) testimony identifying him in a police lineup violated his right to counsel, and (2) newly discovered evidence entitled him to a new trial.

The New Tower Motel in Omaha was robbed shortly after 2:30 a.m., September 4, 1969, by four Negro males. The motel desk clerk, Carl Lundberg, testified as follows: Defendant had produced a pistol which he had pointed at Lundberg's head 2 feet away. He and a companion next removed $385 from the cash register, a watch, and other property. The assailants then bound together Lundberg and another motel employee, J. Edward Fitzsimmons, also present from the beginning. The elapsed time of the robbery was 3 or 4 minutes.

Between 2:30 a.m. and 3 a.m., police officers observed a Lincoln automobile parked some distance from the motel. Defendant and four other Negro males were standing outside. Defendant, clad in a shirt and green trousers, was carrying loose 23 $5 bills. A companion, Shaw, was wearing a hat and carrying 2 $50 bundles of $1 bills banded with bank wrappings. Another one, Cass, produced $130.03 which included rolled coins. A hat lay in the car.

At the police station Shaw dropped a watch between his legs. He also handed over the pistol. No pistol or allegedly stolen property other than money was found on defendant.

At the trial Lundberg and Fitzsimmons identified defendant as the gunman. Lundberg recalled a jump suit worn by one assailant and a blue hat worn by defendant, but he could not further describe the men. Fitzsimmons on cross-examination described defendant's

physical features, such as relative weight, and dress—a hat and two-tone sweat shirt.

Defendant testified to having been wearing a gray sweater and green trousers but no hat. Shaw had been wearing a two-tone green sweater and a gray hat. Defendant and Shaw were similar in build and features, often having been mistaken for brothers. Without knowledge of his companions' nefarious plan, defendant slept in the Lincoln automobile. Awaking, he learned of the robbery while the automobile was speeding away. The money in his possession represented the balance of proceeds of his 2-week pay check.

Lundberg testified on cross-examination by retained counsel who represented defendant throughout the district court proceedings: "Q. Do you remember how you described them . . .? A. Their approximate height and their faces and so on. Q. And what kind of description did you give on them? A. We picked them out of the lineup. THE COURT: Just a moment, I think we better have a little conference over here for a second. (A conference was held between counsel and the Court outside the hearing of the jury.)" Unrelated questioning ensued.

In the presence of the jury the only other inference to lineup occurred in subsequent direct examination of Fitzsimmons by the prosecution: "Q. Did you later . . . see your wrist watch again? A. Yes, sir, in the police station. Q. When was that? A. We went down to identify the suspects. THE COURT: Just a moment now. (THE PROSECUTOR): I will withdraw that. THE COURT: The jury will disregard this last statement." Defense counsel did not move for a mistrial or otherwise object.

Rules excluding testimony evolved at common law partly to prevent incompetent testimony from misleading jurors and partly to keep jurors to the pleaded issues. 9 Holdsworth's History of English Law, 127 (1926). In 1938 a bar committee reported the objec-

tion to be indispensable to preserve rules of admissibility. The objection tends to prevent waste and delay from mistrials. Counsel is not wholly free to remain silent and gamble on a favorable verdict without waiving objection. 1 Wigmore on Evidence (3d Ed., 1940), 270, 322 to 330. In words that have explained the ancient doctrine of estoppel by record, there must be a "decent finality to litigation." 9 Holdsworth's History of English Law, 149, 157, 162 (1926).

Failure to object promptly to an offer of evidence waives the objection. State v. Cook, 182 Neb. 684, 157 N. W. 2d 151 (1968). A similar rule governs the after-objection or motion to strike where the basis first appears subsequently in the trial. Timmons v. School Dist., 173 Neb. 574, 114 N. W. 2d 386 (1962); McCormick on Evidence, 116 (1954). The rules are subject to exceptions. See generally 1 Wigmore on Evidence (3d Ed., 1940), 1964 Supp., 78 to 81.

Trial strategy adopted by counsel without prior consultation with the accused will preclude the accused from asserting constitutional claims in the absence of exceptional circumstances. See Henry v. Mississippi, 379 U. S. 443, 85 S. Ct. 564, 13 L. Ed. 2d 408 (1965). In the present case on a cold record we cannot put a finger on specific strategy of retained counsel. Yet the record bespeaks a conclusion of trial judge and counsel that the proceedings failed to tinge the aura of fairness to defendant. There was no prejudicial error.

Affidavits of Shaw and retained counsel were attached to defendant's motion for a new trial. Shaw in corroborating defendant simply stated that he had refused to testify at defendant's trial because he had been confident of acquittal. Retained counsel stated that Eddie Johnson, one of the robbers, had refused to testify or inform counsel of the true facts that would have proved defendant's innocence. After trial, counsel learned the reason. Johnson had feared that his testimony would have increased the severity of his own sentence.

The right to a new trial for newly discovered evidence depends upon the particular facts and circumstances of each case. Severin v. State, 148 Neb. 617, 28 N. W. 2d 326 (1947). A motion for a new trial is addressed to the sound discretion of the trial court and unless an abuse of discretion is shown, its determination will not be disturbed. New cumulative evidence tendered in support of a motion for a new trial must be so potent that a new trial would probably result in a different verdict. A new trial will not ordinarily be granted for newly discovered evidence which would simply impeach a witness. State v. Wycoff, 180 Neb. 799, 146 N. W. 2d 69 (1966).

The denial of defendant's motion for a new trial was correct.

AFFIRMED.