STATE OF NEBRASKA, APPELLEE, v. RICHARD E. FOWLER, APPELLANT.

271 N. W. 2d 341

Filed November 8, 1978. No. 41882.

T. Clement Gaughan, Lancaster County Public Defender, and Richard L. Goos, for appellant.

Paul L. Douglas, Attorney General, and Bernard L. Packett, for appellee.

Heard before SPENCER, C. J., Pro Tem., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

BRODKEY, J.

This is the second appearance of this case in the Supreme Court. In 1975, we sustained the defendant's conviction by the jury for the crime of embezzlement, and also, at a subsequent hearing, of being an habitual criminal. The court sentenced the defendant at that time to a term of not less than 10 nor more than 15 years in the Nebraska Penal and Correctional Complex. Our opinion following that appeal, as well as the underlying facts of the case, may be found in State v. Fowler, 193 Neb. 420, 227 N. W. 2d 589 (1975).

Thereafter, on January 31, 1977, defendant filed an amended motion to vacate his sentence under the Nebraska Post Conviction Act, sections 29-3001 to 29-3004, R. R. S. 1943. A hearing on his motion for post conviction relief was originally commenced on February 1, 1977, and thereafter was continued and resumed at a later date. On November 29, 1977, the

court entered an order denying defendant post conviction relief. He has appealed to this court from that order. We affirm.

Defendant's numerous assignments of error may be condensed and summarized into three principal contentions, the first being that the court erred in finding that the defendant was an habitual criminal; the second being that he was denied a Jackson v. Denno hearing at his original trial as to the voluntariness of a statement he made to a police officer; and, finally, that his conviction and sentence should have been set aside on the ground that he was denied effective assistance of counsel at his original trial for embezzlement.

Defendant's claim that the court erred in finding him to be an habitual criminal under section 29-2221, R. S. Supp., 1974, following his conviction for embezzlement, is based upon the contention that one of the two previous convictions relied upon by the court at the hearing on the charge of being an habitual criminal was invalid. Defendant contends that that particular conviction was the result of his guilty plea made in October 1969, to a charge of delivering an insufficient funds check. His plea to that charge was entered following the decision of Boykin v. Alabama, 395 U. S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). In Boykin, the court stated: "Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. * * * Second, is the right to trial by jury. * * * Third, is the right to confront one's accusers. * * * We cannot presume a waiver of these three important federal rights from a silent record." Defendant contends that in entering his plea to the above charge, he was not advised by the court that he had a privilege against compulsory

self-incrimination, or the right to remain silent; nor was he advised that he had a right to confront his accusers, being the right to confront the witnesses who testified against him. He contends, therefore, that his guilty plea was not a voluntary and intelligent one, the record being silent on the above two matters.

Following Boykin, the Supreme Court of the United States, in the case of North Carolina v. Alford, 400 U. S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), stated in connection with the acceptance of guilty pleas: "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." In 1971, this court filed its opinion in the case of State v. Turner, 186 Neb. 424, 183 N. W. 2d 763, which case has been consistently followed in this state since it was filed and is the leading authority setting forth the tests to be observed in accepting pleas of guilty. In that case, this court accepted the test enunciated in North Carolina v. Alford, *supra*, that the standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. In the opinion we stated: "This requirement of an item-by-item review of constitutional rights on a guilty plea is a strained and a too extreme construction of those cases." The defendant in that case relied upon Boykin, as Boykin not only requires that a plea of guilty be intelligent and voluntary to be valid but that the record must affirmatively disclose that the defendant entered his plea understandingly and voluntarily. In State v. Turner, *supra*, we also stated that the Standards Relating to Pleas of Guilty promulgated by the American Bar Association should be the minimum procedure in the taking of guilty pleas. In its opinion in Turner, this court considered the requirements of Boykin, but specifically declined to require a ritualistic litany or

item-by-item review of constitutional rights before accepting a guilty plea from a defendant. On the contrary, we stated: "Before accepting a guilty plea a judge is expected to sufficiently examine the defendant to determine whether he understands the nature of the charge, the possible penalty, and the effect of his plea." As previously stated, this court only requires that the procedure conform to the Standards Relating to Pleas of Guilty promulgated by the American Bar Association. Those standards do not require that a defendant be informed as to his right to confront witnesses against him and his privilege against compulsory self-incrimination. While it is true that the American Bar Association Standards Relating to The Function of the Trial Judge, adopted in August 1972, would appear to support defendant's contention in this regard, we wish to point out that this court has never adopted those particular ABA standards, as we did the ABA Standards Relating to Pleas of Guilty, in Turner. We believe, however, it would be better procedure for trial judges accepting pleas from defendants in criminal cases to include the above two items, along with the others customarily given, notwithstanding the rule announced in Turner that the overriding concern and obligation is to make certain that a defendant's guilty plea is intelligently and voluntarily made upon the record; and we suggest a checklist would be helpful in this regard.

In this case, the record reveals that the defendant's guilty plea entered in October 1969, to the charge of issuing an insufficient funds check, which was one of the two prior convictions relied upon by the State in the habitual criminal procedure, was entered intelligently and voluntarily. The defendant at that hearing was represented by counsel; and he was asked if he had talked with his attorney, if he understood that he was waiving his right to a jury trial, whether he understood what he was charged

with, and the penalties therefor, whether any threats, promises, inducements, or force had been used to secure his plea, and whether he was entering his plea freely and voluntarily. His answers to those questions indicate that every effort was made by the court to make certain that he was entering his guilty plea intelligently and voluntarily.

In addition, while defendant's assignment of error regarding the validity of his habitual criminal conviction may be disposed of on the merits, there is an additional procedural reason for finding against the defendant on this point. The record supports the conclusion that the defendant made no effort to challenge the constitutionality of his prior conviction before his habitual criminal hearing, following his conviction for embezzlement. In State v. McGhee, 184 Neb. 352, 167 N. W. 2d 765 (1969), we held that the failure at trial to challenge a prior conviction on the ground of constitutional defects forecloses its challenge on appeal. In the opinion we stated: "We hold that the failure of the defendant to initiate inquiry into the constitutional basis of his prior conviction at or prior to its offer into evidence forecloses him from challenging its validity on an appeal to this court." To the same effect, see State v. LaPlante, 185 Neb. 816, 179 N. W. 2d 110 (1970).

We next consider defendant's assignment of error that the court failed to hold a Jackson v. Denno hearing to determine the voluntariness of a statement he made to a police officer with reference to his handling of a deposit of funds of his firm on the night in question. The court admitted the statement into evidence without holding such a hearing, but did make inquiry of counsel about the matter; and it is alleged that counsel for defendant specifically waived a Jackson v. Denno hearing.

The background for this assignment of error is that defendant's supervisor, a Mr. Consiglio, was called by the prosecution as a witness. The prosecu-

tion asked Consiglio about a conversation the defendant had with a Captain Sellmeyer at police headquarters. Sellmeyer had brought the defendant into his office and had asked him what he had done with the money the night before it was missing. At this point in the trial, the court asked the prosecution and defense counsel to approach the bench. A conversation ensued, but nothing regarding what was said at that time was placed in the record. Consiglio was allowed to continue to testify and stated that the defendant "informed us that he had left the store with the money and Mr. Knapp, taken Mr. Knapp, the assistant manager home, and then he returned to the store and placed both bags of money back in the store in a locked cabinet." The prosecution later adduced evidence that the defendant had given a prior inconsistent statement of what he had done with the money at the time in question. Dean Erickson, who was defendant's attorney at the embezzlement trial, testified at the post conviction hearing that he did not have any recollection of what was said at the bench at that time; however, Ronald Lahners, who was one of the prosecuting attorneys, also testified at the post conviction hearing as to what had transpired at the bench in the original trial. His testimony was: "As I recall, Ms. Bloss, who was co-counsel for the State at that time was on the direct examination of Paul Consiglio, who was a regional manager for the company that Richard was working for and employed by at that time. * * * the conversation started to get into an area of conversations that took place with Mr. Fowler and some statements that he was to make. At that time the Court called counsel forward to the bench and inquired into the propriety of holding a Jackson v. Denno hearing. At that particular time the Court inquired as to what the witness would say if the witness were allowed to go ahead and testify because it appeared that this was the appropriate time to have

a hearing. And at that time as I recall Judge Ronin requested Ms. Bloss to relate what the witness would testify if we proceeded on at that point. She gave a summarization of what Mr. Consiglio would say and after giving that summarization the Court inquired of Mr. Erickson, the counsel for the Defendant, whether or not he wanted to have a Jackson v. Denno hearing with regard to that particular conversation. And at that time it is my recollection that Mr. Erickson told the Court no, that he did not wish to have a Jackson v. Denno hearing and I do not recall whether Mr. Erickson went back and talked with Mr. Fowler and then came back to the bench and said no, or if he just said no, that he did not think it was necessary to have a Jackson v. Denno hearing. I am not sure which he did but in any event he told the Court that he did not wish to have a hearing outside of the presence of the jury at that time with regard to what Mr. Consiglio was about to say. Q. And did Mr. Consiglio then go ahead and testify as to certain statements made by the Defendant in Captain Sellmeyer's office in the presence of Captain Sellmeyer and Mr. Consiglio? A. Yes, that is my recollection of what he testified about. Q. And was that testimony of Mr. Consiglio consistent with what Ms. Dianna Bloss had informed Judge Ronin the testimony of that witness would be? A. That is my recollection. Yes.''

We also point out that defendant's counsel, Dean Erickson, did not ask for a hearing to determine the voluntariness of defendant's statement to Officer Sellmeyer. In State v. Escamilla, 195 Neb. 558, 239 N. W. 2d 270 (1976), we stated: ''In Jackson v. Denno, *supra*, the court stated that in the absence of a request for a hearing to determine voluntariness, the defendant cannot complain of the failure of the court to hold such a hearing.'' See, also, State v. Oliva, 183 Neb. 620, 163 N. W. 2d 112 (1968). It should be noted that it was the trial judge, Judge

Ronin, who interrupted Consiglio's testimony in order to determine the appropriateness of a Jackson v. Denno hearing, and to inquire whether counsel desired to have such a hearing. According to Lahners, Dean Erickson, defendant's counsel, at that time stated that he did not think such a hearing was necessary. In addition, defendant has not at any time either contended or established that his statement to Officer Sellmeyer was involuntary, or the product of force, fear, or coercion. Defendant's second assignment of error is without merit.

As defendant's last assignment of error, he contends that he was denied effective assistance of counsel at his embezzlement trial. In this connection defendant makes four specific complaints regarding the alleged incompetency of his trial counsel, these being that his counsel failed to object to certain hearsay testimony adduced at that trial, that he failed to call the defendant as a witness to testify in his own defense, that he failed to request a jury instruction regarding the failure of the defendant to testify, being NJI No. 14.63, and that he failed to present certain evidence and witnesses favorable to the defendant's case.

Our present standard for determining whether or not counsel for a defendant in a criminal prosecution has provided adequate representation is set out in State v. Leadinghorse, 192 Neb. 485, 222 N. W. 2d 573 (1974): "Our present test would be that trial counsel perform at least as well as a lawyer with ordinary training and skill in the criminal law in his area, and that he conscientiously protect the interests of his client." See, also, State v. Bartlett, 199 Neb. 471, 259 N. W. 2d 917 (1977); State v. Nokes, 192 Neb. 844, 224 N. W. 2d 776 (1975).

Defendant's first complaint about the ineffectiveness of his trial counsel is that his counsel failed to object to the testimony of defendant's supervisor, Consiglio, relative to the contents of certain business

records, as being hearsay. Defendant argues that the State should have been required to produce the business records at the trial to show the truth of what was being asserted about them by Consiglio. In the post conviction hearing, the District Court found that an objection to Consiglio's testimony would have prompted the State to produce the records and would therefore have reinforced the case against the defendant. It would appear that defendant's trial counsel made a tactical decision, as part of his trial strategy, not to object to the failure of the prosecution to introduce the records themselves. In State v. Bartlett, *supra*, we stated: "The decision to object or not to object is part of trial strategy and, accordingly, we grant due deference to the discretion of defense counsel to formulate trial tactics."

The testimony of Consiglio as to the statement made by the defendant to Officer Sellmeyer was not objected to by defense counsel and could also be considered as part of counsel's trial tactics. The statement was exculpatory in nature and was not damaging, at least not until a later witness testified that the defendant had given a conflicting version of what had taken place the night before the money was missing.

The defendant next complains that his attorney did not call him to testify in his own behalf. Although there is conflicting evidence as to defendant's desire to testify at his trial, we believe the court correctly found from the testimony at the post conviction hearing that the defendant's trial counsel had discussed this issue with the defendant and that the defendant had acquiesced in his counsel's advice not to testify. It is clear that defendant's testimony at the preliminary hearing could have been used to impeach the defendant's credibility at the trial, and his past criminal record would have been brought to the jury's attention. We concur in the finding of the District Court in the post conviction hearing that:

"Under these circumstances a decision of legal counsel advising the defendant not to take the witness stand is a matter of reasonable trial strategy and not evidence of a lack of effective assistance of counsel." We have held that trial strategy adopted by counsel without prior consultation with accused will preclude the accused from asserting constitutional claims in the absence of exceptional circumstances. State v. Haynes, 186 Neb. 238, 182 N. W. 2d 199 (1970).

Defendant's third complaint of ineffective assistance of counsel is that Erickson failed to ask for or obtain from the trial court a jury instruction with reference to defendant's failure to testify. This instruction is NJI No. 14.63 and provides: "You are to draw no conclusions or inferences from the fact that the defendant has not testified in this case, and you are entitled to draw no conclusions or inferences as to his reasons in that regard." A preface of that instruction states: "It is recommended that the following instruction be given only if requested or agreed to by the defendant." As a matter of trial tactics, it is commonly known that some defense attorneys request the instruction be given, and others specifically request that it not be given, as, depending upon the circumstances, the giving of the instruction might very well be detrimental to the interests of their client. In this case it is clear that defendant's counsel made a tactical decision that such a jury instruction would cause more harm than good by bringing to the jury's attention and emphasizing the fact that the defendant had not testified, from which fact there might have been an inference that he had good reason not to subject himself to cross-examination. In any event, defendant's counsel specifically requested the court not to give that particular jury instruction.

Finally, defendant complains that his trial counsel did not present certain evidence or witnesses favor-

able to his case. His counsel testified that he called all the witnesses whose names were given to him by his client. Defendant Fowler disputes this fact, but when asked in the post conviction hearing as to the names of the witnesses he wanted to call which his attorney failed to call he stated: "If I can remember their names — I can't recall." The District Court, at the conclusion of the post conviction hearing, found that "defendant's counsel did produce witnesses on behalf of the defendant. The defendant has failed to show how his case was prejudiced by failure of his counsel to subpoena credible witnesses which were made known and were made available to him." The record supports the conclusion of the trial judge.

In addition to the above, defendant has asserted that his trial counsel should have introduced into evidence certain bank and business records which would have shown that the alleged missing money was in fact subsequently deposited and therefore was not stolen. We point out, as revealed by the record in this case, that his counsel, Dean Erickson, was at one time a certified public accountant and was familiar with banking procedures. He testified at the post conviction hearing that he had investigated the bank and business records and that he did not learn of any information which would have been helpful to his client. He also testified at that hearing that had those records been introduced in evidence they would have reinforced the State's case against the defendant.

It is the general rule that it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine plausibility of explanations, or weigh evidence. Such matters are for the trier of fact, and the verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. State v. Tiff, 199 Neb. 519, 260 N. W. 2d 296 (1977).

We conclude from a review of the record that the evidence contained therein is insufficient to support defendant's claim of ineffective assistance of counsel, as well as his claim of prejudice therefrom. Effectiveness of counsel is not to be judged by hindsight. State v. Bartlett, *supra*.

No error in the proceedings having been demonstrated, the order of the District Court denying post conviction relief must be affirmed.

AFFIRMED.

CLINTON and WHITE, JJ., concur in the result.