STATE OF NEBRASKA, APPELLEE, v. THOMAS ROGER HARLAN, APPELLANT.

289 N. W. 2d 531

Filed March 4, 1980. No. 42743.

Vincent M. Powers, for appellant.

Paul L. Douglas, Attorney General, and Harold Mosher, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C. J.

The appellant, Thomas Roger Harlan, appeals from an order of the District Court for Douglas County, Nebraska, denying Harlan's request for post conviction relief under the provisions of section 29-3001 et seq., R. R. S. 1943. We have carefully reviewed the record made at the hearing on the motion for post conviction relief as well as the record of the original trial, which was made a part of the record in this matter, and conclude that there is no merit to appellant's claim for post conviction relief. We accordingly affirm the judgment of the trial court.

For a full understanding of our conclusions in this case it is necessary to review certain of the facts involved in the original trial. Harlan was originally charged in a two-count information, the first count being that Harlan did on or about November 3, 1973, maliciously shoot one Lynnette D. Hamilton with intent to kill, wound, or maim; the second count being that Harlan did on or about the same day unlawfully use a firearm in the commission of a felony. Harlan entered a plea of not guilty to both counts and, after waiving a jury, trial was had to the court. The court found the defendant guilty of count I, count II having been dismissed. On May 1, 1974, Harlan was sentenced to a term of 5 years imprisonment in the Nebraska Penal and Correctional Complex. At the time of oral argument before this court in this matter, counsel for Harlan advised the court that Harlan had served his entire sentence and had been released from the penitentiary. Nevertheless, counsel maintained that Harlan had been illegally convicted of a felony for which he should receive relief in the form of a new trial.

The record in the original case discloses that Harlan defended himself on the ground that although he

fired the weapon, he did not intend to shoot Hamilton. He maintained the shooting was in fact an accident.

The evidence in the original case, including testimony given by Harlan, disclosed that Harlan and Hamilton had lived together for a time, as a result of which a child was born. Early in the morning of November 3, 1973, after having consumed a considerable amount of alcohol, Harlan started thinking about the way he believed Hamilton was treating their child. He had been advised that Hamilton was not properly taking care of the child. He testified that as a result of that information he decided to scare Hamilton. He returned to his parents' home, where he was then living, around 1 o'clock in the morning and got his gun. He stated the purpose of getting the gun was to scare Hamilton. He then went to her aunt's house where Hamilton was living. He required Hamilton to get dressed and go with him into a waiting cab. He stated that he could not remember very much after that. The cab driver, however, testified that he observed Harlan strike Hamilton before they got into the cab, and Harlan himself testified that he struck her when they were inside the cab. There were two other passengers in the cab. One was Harlan's half brother, Reginald Country, and the other was a friend, Clair Colvin. They drove to the home of a Willie Bearfield where the child was apparently being kept.

Harlan testified that he remembered hitting Hamilton with his shotgun while on Bearfield's front porch. He denied threatening her with the gun, however. He did admit that he remembered going to the front porch of Bearfield's house and asking him to have the baby brought out. He testified that when someone answered the door he put the gun on Hamilton's shoulder. He testified that he was mad at her because she wouldn't say anything and wasn't taking care of the baby. Events immediately thereafter are somewhat in dispute but generally indicate

that at that point, Harlan shot Hamilton in the leg and was himself shot by Bearfield. The testimony of both Harlan and Bearfield essentially corroborated the story, except Hamilton testified to the beating administered by Harlan and the fact that Harlan first fired a shot into the porch at the Bearfield home and then shot Hamilton. This testimony was material in view of the fact that Harlan maintained that the shooting of Hamilton was an accident. However, the weapon used was of the type that once it was discharged, in order to again be discharged it was necessary that the bolt be lifted up and moved back so that the spent shell could be ejected, and then again moved forward and down in order to place another shell into the chamber. Apparently, Harlan performed that necessary maneuver in order to have a second shell available with which he shot Hamilton. All of these maneuvers seem inconsistent with Harlan's claim that he did not know the gun was loaded and the shooting of Hamilton was accidental. Bearfield essentially corroborated Hamilton's testimony.

Following his conviction in 1974, Harlan perfected an appeal to this court. His court-appointed attorney filed a motion to withdraw pursuant to our Rule 1 e (1) and, in addition, filed a brief in keeping with the requirements prescribed by the United States Supreme Court in the case of Anders v. California, 386 U. S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493. As a result, this court on December 20, 1974, sustained defense counsel's motion to withdraw and affirmed the conviction.

Almost 4 years later, on October 20, 1978, Harlan filed this motion to vacate and set aside the judgment pursuant to the provisions of the Nebraska Post Conviction Act, section 29-3001 et seq., R. R. S. 1943. He maintains that he had inadequate counsel. The basis of his claim of inadequate counsel is that there were two witnesses to the shooting who were

known to Harlan's trial counsel but who were not called as witnesses. Furthermore, Harlan asserts that had they been called as witnesses their testimony would have been helpful in establishing his defense that he did not intend the shooting and that it was purely an accident.

Before proceeding to review the claims, it may be helpful to set out several recognized rules regarding post conviction relief as established by this court. In the first instance, we have said that our present test is that trial counsel perform at least as well as a lawyer with ordinary training and skill in the criminal law in his area, and that he conscientiously protect the interests of his client. State v. Holtan, *ante* p. 314, 287 N. W. 2d 671. Likewise, we have said that where one maintains that counsel was inadequate, one must likewise show how or in what manner the alleged inadequacy prejudiced the defendant. State v. Lang, 202 Neb. 9, 272 N. W. 2d 775.

In support of Harlan's contention, Reginald Country was called to testify. He stated that he was a witness to the shooting, and that had he been called to testify at the original trial he would have testified that the only reason Harlan had the gun in his possession was because he, Country, had asked Harlan to carry it for him. Country testified that he wished to take the gun to Bearfield's for the purpose of borrowing some money on it and that he was afraid to carry it because he had a previous criminal record while Harlan did not. Country admitted that the gun belonged to Harlan but that its only purpose in being in Harlan's possession at the time of the shooting was because Country was going to borrow money from Bearfield and use the gun as security. This testimony was completely contrary to what Harlan himself had testified to at the time of trial. It is difficult, if not impossible, to envision how Country's testimony as now related could have in any manner been beneficial to Harlan at the time of

the trial in light of Harlan's testimony contradicting Country. Harlan claims that had Country testified that the gun was in Harlan's possession as a favor to Country, he would not have testified that it was in his possession to scare Hamilton. That hardly rises to the type of testimony which would entitle one to post conviction relief.

The insignificance of Country's testimony is made even more apparent when Country testified that he could not hear what was being said on the porch at the time of the shooting because of where he was standing and could not clearly see what was going on because of where the others were standing. A full reading of Country's testimony given at the post conviction hearing would make it clear to anyone who heard that testimony that the most Country could do would be to contradict Harlan's own testimony. It can hardly be said that in failing to call Country, Harlan's counsel did not perform at least as, well as a lawyer with ordinary training and skill in the criminal law in his area. Furthermore, the evidence adduced at the post conviction hearing concerning Country does not in any way indicate how Harlan was prejudiced in the defense of his case by reason of the failure to call him as a witness.

The testimony offered by the other witness, Clair Colvin, is even less material. Colvin did not appear at the post conviction hearing, but his affidavit was offered in evidence. His affidavit indicated that he did not witness the shooting because he remained in the cab. The most that he could testify to was that he heard shots. That can hardly be said to have been of any benefit to Harlan. His affidavit further recited that he likewise would have testified that the reason Harlan had the gun was because Country wanted to pawn it with Bearfield. As we have already noted, that would have been clearly in conflict with what Harlan himself testified. Colvin's testimony was of even less benefit than was Country's

and likewise failed in any manner to show how it was prejudicial.

Harlan's claim that he received inadequate counsel is totally frivolous and without any merit at all. The trial court recognized that fact and denied post conviction relief. We likewise recognize that fact and affirm the judgment of the trial court.

AFFIRMED.

CLINTON, J., concurs in result.