STATE OF NEBRASKA, APPELLEE, V.
BURL HOLLOMAN, APPELLANT.

311 N.W.2d 914

Filed October 30, 1981. No. 44110.

J. David Thurber of John R. Doyle Law Offices for appellant.

Paul L. Douglas, Attorney General, and Lynne Fritz for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C.J.

The appellant, Burl Holloman, appeals from an order entered by the District Court for Douglas County, Nebraska, denying him post conviction relief sought pursuant to Neb. Rev. Stat. §§ 29-3001 et seq. (Reissue 1979). The basis for his claim was that he had been denied effective assistance of court-appointed counsel during his trial on the merits. Specifically, Holloman claimed that his trial counsel failed to adequately represent him in that he failed to interview a known alibi witness and failed to call the witness at trial. He also alleged that his trial counsel failed to investigate the scene of the crime and Holloman's home. Following an evidentiary hearing the trial court found that Holloman's claims of inadequate counsel were without merit and denied post conviction relief. We have now examined the record in this matter and agree with the trial court. For that reason we affirm the judgment of the trial court denying post conviction relief.

Holloman was convicted by a jury of the forcible rape and robbery of a 76-year-old woman who lived in a house next to where Holloman lived. Holloman appealed that conviction to this court and we affirmed the conviction. See *State v. Holloman*, 197 Neb. 139, 248 N.W.2d 15 (1976). The facts of the case are adequately set out in our previous opinion and need not be repeated here except as is specifically necessary to decide this appeal.

The record in *Holloman, supra,* discloses that someone identified by the prosecutrix on three separate occasions as Holloman broke into her home at approximately 6:30 a.m. The assailant then forcibly raped the victim and afterwards robbed her of $20.

The victim identified Holloman as her assailant from photographs shown to her by the police, as well as at a police lineup and an in-court identification. When she reported the crime she advised the officers that her assailant was wearing a blue sweater at the time she

was attacked, and the evidence discloses that the assailant was wearing a shoe with a distinctive heel which left an impression on the damp fresh ground outside the victim's home. When Holloman was arrested the arresting officers observed a blue sweater on a chair next to Holloman's bed, which was seized and offered in evidence at trial. The officers also testified that they observed Holloman's shoes lying on the floor next to his bed. The shoes likewise were seized and offered as evidence in the trial. The heel prints matched those found on the ground outside the victim's home.

Holloman now argues as his first basis for post conviction relief that his court-appointed counsel inadequately represented him, in that counsel did not personally inspect either the home of the victim or Holloman's home so that he could have cross-examined both the victim concerning the attack and the arresting officers as to the location of the sweater and shoes which were seized.

The difficulty, however, with Holloman's argument is that, while Holloman suggests that counsel failed to adequately perform by not personally investigating the victim's home and Holloman's home, he fails to point out to us how such investigation would have in any manner disclosed evidence which would have been of benefit to Holloman during the trial. There was no question during the trial but that the victim had been attacked. Absent suggestion by Holloman as to how it would have made a difference in cross-examining the victim, we are totally at a loss to understand how an examination of the victim's home would have been of any benefit to Holloman in his defense.

Likewise with regard to the claim that counsel should have personally inspected Holloman's apartment so that he could have cross-examined the officers concerning the location of the sweater and the shoes, we are at a loss to understand the argument.

The arresting officer testified at a suppression hearing that after he had identified himself and advised Holloman that he was a suspect in an alleged rape, Holloman consented to the officers' entry into the apartment while Holloman dressed. The testimony then proceeds as follows:

"Q As Mr. Holloman was dressing, was he in your view at all times?

"A Yes, he was.

"Q You had no problems with him?

"A No problems, no.

"Q What happened then?

"A Well, while he was dressing, I noticed a couple pairs of shoes lying on the floor, right where he was sitting down putting his clothes on.

"Q And what did you do then, if anything?

"A I picked up these shoes and observed the heels on them.

"Q What did you observe about the heels?

"A On a pair of dress shoes I observed the heel had an impression similar to that which I had seen in the back yard of the residence of the victim, which was right next door.

"Q What did you do then?

"A I took these shoes as evidence.

"Q All right, were those in the same room as Mr. Holloman was then dressing in?

"A Yes, right next to him.

"Q Do you recall what kind of shoes those were?

"A Florsheim, I believe, they were.

"Q Now, what happened then?

"A Well, he continued to dress, and Officer Keavy pointed out a sweater, which was laying on the chair right next to the bed where he was sitting at.

"Q All right, what kind of sweater was it?

"A It was a light blue long-sleeved sweater, which was mentioned in the original report that the suspect was possibly wearing at the time of the assault.

"Q Was that in the same room in which Mr. Holloman

was dressing?

"A Yes.

"Q What did you do then?

"A I took the sweater as evidence."

The evidence with regard to the shoes and sweater is clear and straightforward. The officer testified that they were near or next to Holloman while he was dressing and that both Holloman and the clothes were in the officer's plain view at all times. Holloman now contends that had his counsel personally viewed his apartment, he might have been able to cross-examine the officer as to the location of the sweater and shoes. Yet he does not in any way advise us how the statements made by the officer were not true or how an investigation would have produced helpful evidence. We are totally at a loss to know how counsel's examination of Holloman's premises a month after his arrest could have possibly produced any evidence which would have discredited the officer's testimony to the effect that the shoes and sweater were in plain view. And Holloman does not advise us how such an investigation would have produced any evidence. He merely argues that if counsel had examined the premises of either the victim or Holloman, he might have in some manner conceived some ingenious argument which would have been of benefit to Holloman. Such a claim is not sufficient to entitle Holloman to post conviction relief. "[W]here one maintains that counsel was inadequate, one must likewise show how or in what manner the alleged inadequacy prejudiced one." *State v. Colgrove*, 207 Neb. 496, 500, 299 N.W.2d 753, 756 (1980). See, also, *State v. Harlan*, 205 Neb. 676, 289 N.W.2d 531 (1980). Likewise, we have frequently held in post conviction relief cases that the person challenging the competency of counsel has the burden of proof to establish the counsel's incompetence. See *State v. Kelly*, 190 Neb. 41, 205 N.W.2d 646 (1973). In a post conviction proceeding the burden of proof is on the movant to establish a basis for

relief, and where such burden is not met a denial of that requested relief is required. See, *State v. Pankey*, 208 Neb. 377, 303 N.W.2d 305 (1981); *State v. Auger & Uitts*, 200 Neb. 53, 262 N.W.2d 187 (1978). The record in this case simply fails to disclose how counsel's failure to examine the various premises in any way prejudiced Holloman. The trial court was correct in denying post conviction relief on that basis.

We now turn to the remaining ground raised by Holloman in his claim for post conviction relief. Holloman now maintains that his trial counsel inadequately represented him in that he did not interview a known alibi witness and call her to testify at trial. At best, the evidence in this case is in conflict as to whether the alibi witness in fact existed at the time of the original trial. At the post conviction hearing both Holloman and the alibi witness, a Brenda Mitchell, testified that they were with each other in bed at Holloman's apartment when the alleged attack was to have occurred and that, therefore, Holloman could not have been the attacker. Holloman's trial counsel denies that he was ever told about Brenda Mitchell being with Holloman at the time that the attack was alleged to have occurred. The evidence in the case would tend to support the statement of trial counsel.

At the initial trial, where Holloman did not testify, two witnesses were called by Holloman. They consisted of a Charles Bush and a Janice Mitchell, Brenda Mitchell's older sister. Both of them testified that Holloman had been with them at a party and was taken home around 6:30 a.m. No mention was made by either of the witnesses as to the presence of Brenda Mitchell. Brenda now maintains that the reason neither mentioned her name at trial was because she asked them not to. She said her reason for not wanting her presence to be disclosed was due to the fact that she was only 14 years of age and her parents had forbidden her to have any relations with Holloman. Neither Bush

nor Janice Mitchell testified at the post conviction trial in support of Brenda Mitchell's claim.

Furthermore, a Mr. Pitmon Foxall, an investigator for the public defender's office, from where Holloman's counsel was appointed, did in fact interview Brenda Mitchell before trial. During that interview she never mentioned being with Holloman, and in fact her statement was to the contrary. The report indicates that she told Foxall "she did not believe Holliman [sic] would do a thing like that, cause all he would have to do was come over and see her." The clear implication from the statements given by Brenda Mitchell to investigator Foxall was that she was not with Holloman at the time the alleged attack occurred.

There are further inconsistencies in her testimony. Brenda Mitchell testified at the post conviction hearing that she left Holloman's apartment when the police first attempted to talk to Holloman at approximately 7:30 a.m. She said she went next door to her own home where her sister, Janice, let her in. However, the investigative report prepared by Foxall, dated October 7, 1975, indicates that Janice advised Foxall that she was not, on the day of the attack, living at home, but, rather, was living with her cousin, Karen Mitchell. Court-appointed counsel further testified that during one of the initial interviews with Holloman, the matter of an alibi defense was discussed. At that time Holloman advised counsel that at the time of the alleged crime he was in bed and had no alibi. There was obviously a conflict in the evidence at the post conviction hearing which the trial court was required to resolve. It resolved that conflict in favor of the State and against Holloman. We cannot say that the trial court's determination in that regard was in error. "[I]t is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine plausibility of explanations, or weigh evidence. Such matters are for the trier of fact, and the verdict must be sustained

if, taking the view most favorable to the State, there is sufficient evidence to support it." *State v. Fowler*, 201 Neb. 647, 658, 271 N.W.2d 341, 348 (1978). See, also, *State v. Tiff*, 199 Neb. 519, 260 N.W.2d 296 (1977). It is apparent to us, as it was obviously apparent to the trial court, that trial counsel did not call Brenda Mitchell to testify as an alibi witness because Brenda Mitchell did not exist as an alibi witness at the time of the trial. In fact, had she been called to testify then, as she now claims she would have testified, her testimony would have been in direct conflict with the testimony of two other witnesses already called without objection by Holloman. The trial court obviously concluded that the claim of Holloman to the effect that his trial counsel was inadequate was totally unsupported by any evidence and wholly without merit. We agree with that conclusion. The judgment of the trial court in denying post conviction relief is affirmed.

AFFIRMED.